Exhibit "A"

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

COLUMBUS BANK AND TRUST     *
COMPANY, A DIVISION OF SYNOVUS   *
BANK,                    *
                        *   CIVIL ACTION FILE
        Petitioner,     *   NO. _____
                        *
v.                     *   *SU 11 CV 3875*
                     *
LAW OFFICE OF MICHAEL A. EDDINGS,  *
P.C., FIRSTAMERICAN TITLE INSURANCE*
COMPANY, FIRST AMERICAN TITLE    *
COMPANY, JOHN DOE 1, JOHN DOE    *
2, JOHN DOE 3, ET AL.,          *
                     *
        Respondents.    *

PETITION FOR INTERPLEADER

      Columbus Bank and Trust Company, a division of Synovus Bank ("CB&T"), files

this Petition for Interpleader pursuant to the provisions of O.C.G. A. §23-3-90 et. seq.,

and in so doing, shows as follows:

1.

      Law Office of Michael A. Eddings, has its principal place of business and

Registered Agent for Service in Muscogee County, Georgia.  Said Respondent may be

served by serving its Registered Agent, Michael A. Eddings, 860 Brookstone Centre

Parkway, Suite B, Columbus, Georgia 31904.

2.

      On information and belief, First American Title Insurance Company, is a

California corporation qualified to do business in the State of Georgia, with its principal

office at 5607 Glenridge Drive, N.E., Suite A200, Atlanta, Georgia 30342.  It may be

served at said address by serving its Registered Agent for Service, C. Scott Logan.

3.

On information and belief, First American Title Company, is a California corporation qualified to do business in the State of Georgia, with its Registered Agent for Service, Corporation Service Company, 40Technology Parkway, South, Suite 300, Norcross, Georgia  30092.

4.

On information and belief, John Doe 1, is believed to be a claimant of the funds noted herein and to be a resident of Muscogee County, Georgia.

5.

On information and belief, John Doe 2, is believed to be a claimant of the funds noted herein and to be a resident of Muscogee County, Georgia.

6.

On information and belief, John Doe 3, is believed to be a claimant of the funds noted herein and to be a resident of Muscogee County, Georgia.

7.

On information and belief, there may be other claimants of the funds noted herein. Said claimants to be identified by amendment and to be served accordingly.

8.

The Law Office of Michael A. Eddings, P.C. has been and currently is a customer of Petitioner.  Said Respondent has maintained a depository account with Petitioner which is designated an IOLTA Trust Account, Account Number -----766, which account is believed to contain funds belonging to one or more of the Respondents and possibly other persons or entities yet identified.

9.

On October 28, 2011, Petitioner was advised that there is considerable uncertainty as to the specific ownership of the funds on deposit in said account and that there is a risk of the funds in question being delivered to persons other than those who have legitimate claims for said money.

10.

On information and belief, given the potential claims to said funds and the uncertainty as to the ownership thereof, Petitioner shows that it is doubtful or dangerous for Petitioner to act in the disbursement thereof and that it is appropriate for Petitioner to apply to equity to compel all claimants to interplead and to show cause to this Court as to why said funds should be disbursed to them.

11.

The account and funds held are situated in Muscogee County, Georgia, and as such venue and jurisdiction are proper herein.

12.

Given the conflicting information and claims relative to said funds, Petitioner cannot safely pay the funds on deposit to any one respondent or to any one person, until the respective rights of said persons or entities have been determined and otherwise adjudicated by the Court.

13.

Petitioner makes no claim to the funds held in the aforesaid account or to the funds hereby tendered into the Registry of the Court. As to the remaining funds on deposit, Petitioner herewith seeks permission to deposit said funds along with any and all

future deposits into said accounts into the registry of the Court pending a determination by the Court of the appropriate disposition of the account and funds in question.

14.

Petitioner reserves the right to amend its Petition for the purpose of seeking direction or to otherwise having adjudicated the rights of Respondents.

Wherefore, Petitioner prays as follows:

(a)     That the usual proceedings be had as in all cases of a Bill of

   Interpleader;

(b)     That the Court issue an order directing the disposition of the funds

   described herein;

(c)     That an Order be issued discharging Petitioner from further

   obligation with respect to said monies and account;

(d)     That Petitioner be permitted to recover its costs from the funds paid into

   the registry of the Court, and

(e)     For such other and further relief as may be just and proper, premises

   considered.

This **25** day of October, 2011.

      PAGE, SCRANTOM, SPROUSE,
      TUCKER & FORD, P.C.

      By: _____

        William L. Tucker
        State Bar No.: 718050

1111 Bay Avenue
Third Floor, Synovus Centre
Post Office Box 1199      Attorneys for Columbus Bank and
Columbus, Georgia 31902-1199   Trust Company, a Division of Synovus
(706) 324-0251        Bank

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COLUMBUS BANK AND TRUST COMPANY, A DIVISION OF SYNOVUS BANK, | * <br> * <br> * <br> * |
| Petitioner, | *    CIVIL ACTION FILE <br> *    NO. SU11CV 3875 <br> * |
| v. | * <br> * |
| LAW OFFICE OF MICHAEL A. EDDINGS, P.C., FIRSTAMERICAN TITLE INSURANCE COMPANY, FIRST AMERICAN TITLE COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, ET AL., | * <br> * <br> * <br> * <br> * <br> * |
| Respondents. | * |

## VERIFICATION TO PETITION FOR INTERPLEADER

GEORGIA, MUSCOGEE COUNTY.

Comes now, TIM FARMER, having been duly sworn, and states that the facts and information contained in the foregoing Petition for Interpleader are, to the best of his knowledge and belief, true and correct and that neither he nor Columbus Bank and Trust Company, a Division of Synovus Bank, are in collusion with either or any party claiming the property or funds specified in said Petition.

_____
TIM FARMER, on behalf
of and as an employee of Columbus
Bank and Trust Company

Sworn to and subscribed to before
me this 28 day of October, 2011.

_____
Notary Public, Muscogee County,
Georgia

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

COLUMBUS BANK AND TRUST     *
COMPANY, A DIVISION OF SYNOVUS     *
BANK,     *
    *   CIVIL ACTION FILE
          Petitioner,     *   NO. SU11CV3875
    *
v.     *
    *
LAW OFFICE OF MICHAEL A. EDDINGS,  *
P.C., FIRSTAMERICAN TITLE INSURANCE*
COMPANY, FIRST AMERICAN TITLE     *
COMPANY, JOHN DOE 1, JOHN DOE     *
2, JOHN DOE 3, ET AL.,     *
    *
          Respondents.     *

## ORDER ON INTERPLEADER

      The Court having considered Columbus Bank and Trust Company, a Division of

Synovus Bank (CB&T) Petition, Petitioner is hereby directed to interplead the funds held

in the account identified therein into the registry of this Court. Said funds to be held by

the Clerk of Superior Court until such time as the Court may adjudicate the rights and

appropriate disposition of said funds.

      This _28th_ day of _October_, 2011. @ 5 10 P.M.

                       _(signature)_

                       Judge, Superior Court of Muscogee
                       County, Georgia

OFFICIAL CHECK

## CB&T
a division of SYNOVUS BANK
P.O. BOX 120 • COLUMBUS, GA 31902

431020435

64-60
611

*DATE*

PAY

THE SUM *72949*34*

TO
THE
ORDER
OF

Clerk of Superior Court

$   *472,949.34*

REMITTER

Columbus Bank & Trust

FOR

PAYABLE THROUGH SYNOVUS BANK COLUMBUS, GEORGIA

AUTHORIZED SIGNATURE
NOT NEGOTIABLE

## IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST COMPANY, A DIVISION OF SYNOVUS BANK, | : : : | CIVIL ACTION FILE NO. SU-11-CV-3875 |
| Petitioner | : : | |
| vs. | : : : | |
| LAW OFFICE OF MICHAEL A. EDDINGS, P.C., FIRST AMERICAN TITLE INSURANCE COMPANY, FIRST AMERICAN TITLE COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | : : : : : | |
| Respondent | : | |

*(filing stamp, right margin:)* FILED IN OFFICE 2011 NOV -7 PM 3:27 M. LINDA PIERCE MUSCOGEE COUNTY SUPERIOR COURT

## ANSWER TO PLAINTIFF'S PETITION FOR INTERPLEADER

*COMES NOW*, Defendant, Ike A. Nwaobi, herein an unnamed but intended Respondent in the above-styled civil action (hereinafter referred to as "Nwaobi") and submits this his Answer to Plaintiff's Petition for Interpleader responding *seriatim* to the numbered paragraphs thereof, and respectfully shows unto this Honorable Court as follows:

Answer

### 1.

Nwaobi admits Paragraph 1 of Plaintiff's Petition.

### 2.

Nwaobi admits Paragraph 2 of Plaintiff's Petition.

### 3.

Nwaobi admits Paragraph 3 of Plaintiff's Petition.

4.

Nwaobi admits Paragraph 4 of Plaintiff's Petition.  By way of further Answer, Nwaobi is a claimant of funds noted in Plaintiff's Petition, is a resident of Muscogee County, Georgia, and believes that he is the Respondent identified in Paragraph 4 of said Petition as John Doe 1. Nwaobi acknowledges that there may be other claimants of the funds noted in Plaintiff's Petition, and that if he is not John Doe 1, he should be specifically named as one of the claimants for such funds.

5.

Nwaobi admits Paragraph 5 of Plaintiff's Petition.

6.

Nwaobi admits Paragraph 6 of Plaintiff's Petition.

7.

Nwaobi admits Paragraph 7 of Plaintiff's Petition.

8.

Nwaobi admits Paragraph 8 of Plaintiff's Petition.

9.

Nwaobi admits Paragraph 9 of Plaintiff's Petition.

10.

Nwaobi admits Paragraph 10 of Plaintiff's Petition.  By way of further Answer, Nwaobi shows that on October 27, 2011, he wire-transferred the amount of Nine Thousand Eight Hundred and no/100 ($9,800.00) United States Dollars to the Law Offices of Michael A. Eddings, P.C., depository account 30050766, for a real estate closing to be held on or about November 2, 2011.  A copy of Nwaobi's wire transfer request is attached hereto as Exhibit "10."

11.

Nwaobi admits Paragraph 11 of Plaintiff's Petition.

12.

Nwaobi admits Paragraph 12 of Plaintiff's Petition.

13.

Nwaobi admits Paragraph 13 of Plaintiff's Petition.

14.

Nwaobi admits Paragraph 14 of Plaintiff's Petition.

15.

Responding to the unnumbered "*WHEREFORE*" paragraph of Plaintiff's Petition,

Nwaobi responds *seriatim* to the sublettered paragraphs as follows:

(a)     This subparagraph requires no response.

(b)     Nwaobi has no objection to this subparagraph.

(c)     Nwaobi has no objection to this subparagraph.

(d)     Nwaobi has no objection to this subparagraph.

(e)     This subparagraph requires no response.

16.

Nwaobi demands strict proof of any and all allegations contained in Plaintiff's Petition

which are not expressly admitted or denied.

Having fully responded to Plaintiff's Petition for Interpleader, Nwaobi prays unto this

Honorable Court as follows:

(a)     That this Answer be accepted and filed in accordance with law;

(b)     That Nwaobi's funds in the amount of Nine Thousand Eight Hundred and no/100

($9,800.00) Dollars paid by Petitioner into the Registry of this Court be disbursed

to Nwaobi as the Court may deem appropriate;

(c)     That Nwaobi be permitted to recover attorney fees and costs from the funds paid

into the Registry of this Court; and,

(d)     For such other and further relief as this Honorable Court deems just and proper.

***RESPECTFULLY SUBMITTED*** this 7th day of November, 2011.

MEACHAM, EARLEY & FOWLER, P.C.

By: _____

Christopher L. Meacham, Esquire
GA Bar #0500050
Attorneys for Defendant, Ike A. Nwaobi

PO Box 9031
Columbus, GA 31908-9031
Phone: 706-576-4064
Fax:    706-596-0621

# EXHIBIT "10"

# Wire Transfer Services
# Outgoing Wire Transfer Request



A customer or team member, with the customer present, completes this form when requesting to send a wire. Outgoing wires can only be sent for Wells Fargo customers. Retain the original copy in the bank and provide a copy to the customer ensuring you give the customer the Agreement for Outgoing Wire Transfer Request (page 2 when form is accessed on-line & preprinted on the back of printed forms). Required information is noted with an asterisk. Note: Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See (page 2) for explanations of the Mexican CLABE account, the SWIFT BIC, the International Routing Code (IRC) and the International Bank Account Number (IBAN).

**\*Today's Date**

**\*Send Date** (if next day submit wire after 4:30 CT. Store must hold if other than today or next day date.)

### 1. Originator's Information

**\*Customer's Name**
TYE A NWAOBT

**\*Phone Number**

**\*Customer's Address, City, State, Zip Code**
1315 WALDEN CHASE LN

**\*Transfer from Wells Fargo Bank Account No.** (Must be checking, savings, market rate or wholesale checking account)
1010146084283

**\*U.S. Dollar Wire Amount**
9,800.00

**International Wire only:** When sending in foreign currency, please ensure the beneficiary's account accepts the designated currency.
Funds to be sent in foreign currency    Foreign Currency Type/Name (SVT/SVP will default to FX unless specified otherwise)   **\*Currency Code** (if known)    **\*Foreign Currency Amount**
☐ Yes   ☐ No

### 2. Beneficiary/Recipient Information (This is the ultimate recipient of the wire transfer funds.)

**\*Beneficiary/Recipient Name**
LAW OFFICES of Michael A EDDINGS, P.C.

**\*Beneficiary Account Number, Mexican CLABE # or the International Bank Account Number (IBAN) where applicable:**
3005076666

**Beneficiary Address, City, State, Zip Code** (A physical address is required for foreign wires.)

**Information for the Beneficiary** (Invoice number, Purchase order number, etc.)

**Beneficiary Phone Number**

### 3. Beneficiary Bank Information (This is the financial institution where the beneficiary maintains their account.)

**\*Beneficiary Bank RTN or SWIFT Bank Identifier Code (SWIFT BIC)**
061100606

**\*International Routing Code (IRC)**

**\*Beneficiary Bank Name**
CB&T

**Beneficiary Bank Address, City, State, Zip Code & Country** (optional information)

**Information for Beneficiary Bank** (wires to Mexican banks require the CLABE account number in the Beneficiary instructions to ensure correct payment.)

### 4. Intermediary Bank Information (This is a financial institution that the wire must pass through before reaching the final beneficiary bank.) This section is optional and not required for all wires.
Please note that routing may be altered depending on Wells Fargo Bank's correspondent relationships.

**Optional: \*Intermediary Beneficiary Bank RTN or SWIFT BIC**

**International Routing Code (IRC)**

**\*Intermediary Bank Name**

**\*Intermediary Bank Account No.**

**Intermediary Bank Address, City, State, Zip, Country** (optional information)

**Information for Intermediary Bank**

### 5. Wire Fee & Customer Signature (Additional fees from intermediary and beneficiary banks may be charged to international transactions - see Fees Section on page 2 of this form.)

Wire Fee Amount (the Transfer From account will be charged the fee.) The region that houses the account being debited determines the fee amount. Use the fee information available through Teamworks and/or the Banker's Guide. Do not use SVT/SVP for fee when account is not in your region. Additional fees may apply (see page 2 of this form).

**\*AU where the Originator's account is located**
66833

**\*Fee Amount**
35.00

My signature here indicates agreement to all of the information on this Outgoing Wire Transfer Request and to the terms and conditions on the second page of this request. Wells Fargo Bank is authorized to rely on the information on this Request in making the requested funds transfer.

**\*Date**
10/27/11

⊢x  NWAObi

### 6. Bank Use Only – Bank Approval – Following MUST be completed for ALL outgoing wires.

International Wire Foreign Currency Information
Rate                                        Contract No. (required when $15,000 or more U.S.)          FX Trader Contact

**\*Wire Transaction/FAS Number**
EW-0066833-200-909958

**\*Name on ID used by customer**
TYE A AWAOBI

**Method used to verify business acct. transaction authority**

**\*1st ID type, number, Issued by State/Country & Expiration Date**
IDN  GA  055766039  ex 11/12

**\*2nd ID type, Issued by State/Country & Expiration Date**
PIN  VERIFIED

**\*Initiated by and AU#**
⊢x       66833

**\*First Approval**
⊢x

**Second Approval, if applicable**
⊢x

### 7. Wires in Progress (WIP)

**\*When Customer's account is not debited, the WIP Account is funded by:**
☐ Paid by Check   ☐ Paid Cash   ☐ Paid through account other than checking, savings, MRA, TRS or Hogan.   Reference Acct #:

Tax ID Type-Type & No. are required when customer's account is not debited.        Tax ID No. (if non-citizen provide Alien ID #, Passport # & Country)
☐ Social Security   ☐ ITIN   ☐ Non-U.S. Citizen without TIN   ☐ Employer ID

### 8. Customer Not Present

Verification of Originator (Telephone, fax, or written requests)
Reason caller cannot come into the Bank          Caller's location                          Caller's immediate phone number
                                                 ☐ Company ☐ Home   ☐ Other:

Confirmation of Request (Team member other than the initiator calls customer for confirmation)
Phone # to call to verify request        Time of call to customer          Source used                        Token verified?
                                                                          ☐ Bank Records  ☐ Telephone Directory  ☐ Other:    ☐ Yes ☐ No

Name of person placing call              Customer Contact Name                              Customer
                                                                                            ☐ Approved the transfer   ☐ Denied the transfer

Telephone, Fax, or Written Request (Approval obtained by Private Banking Mgr., Business Banking Mgr., Retail - next level of authority above Store Management)
Approver's Printed Name                  Approver's Signature                      Date
                                         ⊢x

# Agreement For Outgoing Wire Transfer Requests

**Responsibility of the Bank.** The Bank is only responsible for making a good faith effort to execute the payment order described in the Outgoing Wire Transfer Request (the "Order"). The Order may be sent by wire, telegraph, telephone, cable, or whatever other transmission method the Bank considers to be reasonable. The Order may be transmitted directly to the Beneficiary Bank, or indirectly to the Beneficiary Bank through another bank, government agency, or other third party that the Bank considers to be reasonable.

**Agent.** Bank may use agents of its choice to perform any of its obligations.

**Limitation of Liability.** The Bank will not be liable for any loss or damage due to the failure, delay, or error of: (1) the method of transmission selected by the Bank, (2) a third party selected by the Bank to receive the Order, or (3) the Beneficiary Bank. IN NO EVENT WILL THE BANK BE LIABLE FOR DAMAGES ARISING DIRECTLY OR INDIRECTLY IF THE ORDER IS EXECUTED BY THE BANK IN GOOD FAITH AND IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT. REGARDLESS OF THE FORM OR NATURE OF ANY CLAIM OR ACTION, IN NO EVENT WILL THE BANK BE LIABLE FOR PUNITIVE, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT THE BANK SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Reliance on Information Provided.** Bank may rely solely (i) on the account number of the person ("Beneficiary") who is to receive the wire transfer rather than the Beneficiary's name, and (ii) if provided by you, on the identification number of any other financial institution through or to which the funds are to be transferred, rather than the name of the financial institution.

**International Wire Transfers.** A Payment Order expressed in U.S. Dollars will be sent in U.S. Dollars. Company may request that prior to executing a Payment Order, Bank convert the amount to be transferred from U.S. Dollars to the currency of a designated foreign government or intergovernmental organization ("Foreign Currency") at Bank's sell rate for exchange in effect on the date Bank executes the Payment Order. If the financial institution designated to receive the funds does not pay the beneficiary specified in a Payment Order payable in Foreign Currency and the funds are returned to Bank, Bank will not be liable for a sum in excess of the value of the funds after they have been converted from Foreign Currency to U.S. Dollars at Bank's buy rate for exchange at the time the cancellation of the Payment Order is confirmed by Bank. Bank will not be liable for any failure or delay by any financial institution or other third party in the designated foreign country in executing or failing to execute any Payment Order Bank transmits to a foreign country.

**Refund.** If the Beneficiary Bank does not pay the Beneficiary specified on the Order, a refund will be made only after the Bank has received confirmation of the effective cancellation of the Order and the Bank is in free possession of the funds debited or earmarked in connection with the Order. If the order is payable in Foreign Currency, the Bank will not be liable for a sum in excess of the value of the Order after it has been converted from Foreign Currency to U.S. Dollars at the Bank's buying rate for exchange at such time as the cancellation of the Order is confirmed by the Bank.

**Failure to Transfer Proper Amount.** If the Bank is notified that it did not transfer the full amount stated in the Request, the Bank's sole liability will be to promptly execute a second payment Order in the amount of the stated deficiency. If the Bank executes an instruction in excess of the amount stated in the Request, to the extent that the originator does not receive the benefit of the Order, the Bank will only be liable for any loss of the principal amount transferred in excess of the amount stated in the Request instructions. Additionally, the Bank will be liable for the amount of interest the originator has lost due to the transfer of the excess amount, computed at the then current Federal Funds rate. However, the Bank's liability for loss of interest shall be limited to twenty (20) calendar day's interest. This section sets forth the Bank's complete liability for the order issued under this agreement.

**Finality of orders.** The order will be final and will not be subject to stop payment or recall, except that the Bank may, at the originator's request, make an effort to effect such stop payment or recall. In such case, the Bank will incur no liability for its failure or inability to do so.

**Fees.** In addition to the outgoing wire transfer fee, additional fees may apply. Additional fees can include, but are not limited to: an additional fee for bank initiated transactions, amendment fees, statement fees, fees assessed by beneficiary and intermediary banks, etc. On international outgoing wires, if a SWIFT BIC, IRC, IBAN, or CLABE number is not provided the foreign banks may return the wire or assess a surcharge. Wells Fargo Bank Wire Transfer Fees are disclosed in your most recent Fee and Information Schedule and related amendments.

**Acts of God.** The Bank is excused for delays or failure to execute the Order to the extent that the delay or failure results from a cause beyond the reasonable control of the Bank.

---

### Wire Transfer Information

**General Information:** You can NOT have a bank as the final beneficiary, unless the wire is a payment to the bank (i.e.: mortgage, auto loan, etc.). We are required to know who the money is going to, to ensure the funds are not being used to support terrorist or drug activity. We need an account number for the beneficiary OR a complete physical address. No PO Boxes may be used when no account number is provided for the Beneficiary.

**International Wires:** Wires going to foreign countries require different numbers depending on the receiving foreign country. All wire transfer payments destined for Europe should include the SWIFT Bank Identifier Code (SWIFT BIC), International Routing Code (IRC) as applicable, and for participating countries the beneficiary's International Bank Account Number (IBAN). Mexican banks require a CLABE number in addition to the SWIFT BIC.

1. **SWIFT Bank Identifier Code (SWIFT BIC).** The 8 or 11 character SWIFT BIC is a unique series of alpha numeric characters that help to identify a specific financial institution. The SWIFT BIC should be obtained from the beneficiary. To ensure timely delivery please be sure that international outgoing wires include the SWIFT BIC where applicable.

2. **International Routing Code (IRC):** Some countries throughout the international banking community have created International routing codes, which are used in combination with the SWIFT BIC to aid in routing the payment through a main office to a branch. Each country has a specific name for their routing code (i.e., Sort Code in the United Kingdom, Canadian Payments Association Routing Numbers in Canada). Your beneficiary must provide the international routing code to facilitate receipt of an international payment. Sending a wire without the IRC number can delay the wire, or the receiving bank may return the wire when this number is not included in the payment instructions, and additional fees may be assessed.

3. **International Bank Account Number (IBAN):** The IBAN varies by country/institution. Warning! Only the bank servicing an account can provide the correct IBAN of that account and must be obtained from the beneficiary of the wire. Sending a wire to a participating country without the IBAN can delay the wire, or the receiving bank may return the wire when the IBAN is not included in the payment instructions, and additional fees may be assessed.

Participating Countries that require an IBAN:

| | | |
|---|---|---|
| Andorra | Guadeloupe | Poland |
| Austria | Hungary | Portugal |
| Belgium | Iceland | Reunion Island |
| Bosnia and Herzegovina | Ireland (Republic of) | Romania |
| Bulgaria | Isle of Man | San Marion |
| Croatia | Italy | Saudi Arabia |
| Cyprus | Latvia | Serbia and Montenegro |
| Czech Republic | Liechtenstein | Slovakia Republic |
| Denmark | Lithuania | Slovenia |
| Estonia | Luxembourg | Spain |
| Finland | Macedonia | Sweden |
| France | Malta | Switzerland |
| French Guiana | Martinique | Tunisia |
| French Polynesia | Monaco | Turkey |
| Germany | Netherlands | United Kingdom |
| Gibraltar | New Caledonia | |
| Greece | Norway | |

4. **Mexico CLABE Account Number:** Mexican banks now require an 18 digit CLABE account number be added to the Beneficiary instructions to ensure payment. The CLABE number is required on all Mexican Peso (MXN) and USD payments sent to Mexico. The CLABE account number must be obtained from the beneficiary. If the beneficiary does not have the CLABE account number, please have the beneficiary contact their bank. Wells Fargo does not provide or calculate the CLABE. Sending a wire without a CLABE account number can delay the wire, or the receiving bank may return the wire if the CLABE is not included in the payment instructions, and additional fees may be assessed.

5. **Wells Fargo recommends** that if you do not have a SWIFT BIC, IBAN, IRC, or Mexican CLABE number, that you contact the beneficiary of the wire. If the beneficiary does not have the needed information, please have the beneficiary contact their bank to obtain the appropriate information. Sending international wires without the required information can cause the wire to be delayed, returned, or assessed additional fees.

For International outgoing wires only: When sending in foreign currency, please ensure the beneficiary's account accepts the designated foreign currency. International foreign currency wires are generally less expensive to send as compared with International USD wires (the Wells Fargo wire fee is always less when the wire is sent in foreign currency and Wells Fargo does not charge a converting fee; we also offer competitive exchange rates.) For International wires in foreign currency that are equal to or over $15,000 U.S. equivalent, please call your local Foreign Exchange Specialist at 800-786-5593, to obtain a contract number.

## VERIFICATION

STATE OF GEORGIA

COUNTY OF MUSCOGEE

Personally appeared before me, the undersigned, IKE A. NWAOBI, after first being duly sworn, deposes and says that he is the Plaintiff in the foregoing captioned cause, and that the facts contained herein are true and correct.

_____

IKE A. NWAOBI

Sworn to and subscribed before me this

___3RD___ day of __November_____, 2011.

_____
Notary Public
My Commission Expires: __Apr. 1 26, 2014_____

## IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST COMPANY, A DIVISION OF SYNOVUS BANK, | : : : | CIVIL ACTION FILE NO. SU-11-CV-3875 |
| Petitioner | : : | |
| vs. | : : : | |
| LAW OFFICE OF MICHAEL A. EDDINGS, P.C., FIRST AMERICAN TITLE INSURANCE COMPANY, FIRST AMERICAN TITLE COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | : : : : : | |
| Respondent | : | |

### CERTIFICATE OF SERVICE

I do certify that I have on this day served a copy of the above and foregoing document upon the person named below by mailing a copy of the same through the United States Mail with adequate postage attached thereto to insure proper delivery, addressed as follows:

*William L. Tucker, Esquire*
*Page, Scrantom, Sprouse, Tucker & Ford, P.C.*
*1111 Bay Avenue, Third Floor, Synovus Centre*
*PO Box 1199*
*Columbus, GA 31902-1199*
*Phone: 706-324-0251*
*Attorneys for Columbus Bank & Trust Company, a Division of Synovus Bank*

**RESPECTFULLY SUBMITTED** this 7th day of November, 2011.

MEACHAM, EARLEY & FOWLER, P.C.

PO Box 9031
Columbus, GA 31908-9031
Phone: 706-576-4064
Fax:    706-596-0621

By: _____
Christopher L. Meacham, Esquire
GA Bar #0500050
Attorneys for Defendant, Ike A. Nwaobi

ME&J/GA/Litigation/Gen'l Civil/Nwaobi, Ike
   Answer to Plaintiff's Petition for Interpleader

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

COLUMBUS BANK AND TRUST COMPANY,       *
A DIVISION OF SYNOVUS BANK,             *          Civil Action File No.:
                                        *          SU-11-CV-3875
            Petitioner,                 *
                                        *
Vs.                                     *
                                        *
LAW OFFICE OF MICHAEL A. EDDINGS, P.C., *
FIRSTAMERICAN TITLE INSURANCE           *
COMPANY, FIRST AMERICAN TITLE           *
COMPANY, JOHN DOE 1, JOHN DOE 2,        *
JOHN DOE 3, ET AL.                      *
                                        *
            Respondents.                *

JEROME ROGERS' ANSWER, COUNTERCLAIM AND CROSS CLAIM TO
PETITIONER'S INTERPLEADER PETITION

COMES NOW, Jerome Rogers (identified as "John Doe" in the above styled action), and makes this his claim to his money in the above-styled action by filing this Answer, Cross Claim, and Counterclaim to Petitioner's Interpleader Petition and shows unto this Honorable Court as follows:

FIRST DEFENSE

Jerome Rogers ("ROGERS") responds to the separately numbered paragraphs comprising PETITIONER's Petition for Interpleader as follows:

1.

ROGERS admits the allegations contained in Paragraph One (1) of PETITIONER's interpleader action.

2.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Two (2) of PETITIONER's interpleader action.

3.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Three (3) of PETITIONER's interpleader action.

4.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Four (4) of PETITIONER's interpleader action.

5.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Five (5) of PETITIONER's interpleader action.

6.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Six (6) of PETITIONER's interpleader action.

7.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Seven (7) of PETITIONER's interpleader action.

8.

ROGERS admits the allegations contained in Paragraph Eight (8) of PETITIONER's interpleader action. By way of further answer thereto, ROGERS shows that he wired the sum of $89,498.90 to the trust account of the Law Office of Michael A. Eddings, P.C., pursuant to the wiring instructions received from the Law Offices of Michael A. Eddings, P.C. A copy of the wiring instructions are attached hereto as Exhibit "1" and made a part hereof by reference. A copy of the wire transfer is attached hereto as Exhibit "2" and made a part hereof by reference. ROGERS wired said funds to said trust account of Michael A. EDDINGS, P.C. ("Eddings"), for purposes of purchasing real estate, with a closing scheduled for 10:00 a.m., on Friday, October 28, 2011. The scheduled closing did not occur due to the actions of either the Defendants and/or the PETITIONER. ROGERS' funds are still in the trust account of EDDINGS, and comprise part of the funds paid into the Registry of the Court.

9.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Nine (9) of PETITIONER's interpleader action.

10.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph Ten (10) of PETITIONER's interpleader action.

11.

ROGERS admits the allegations contained in Paragraph Eleven (11) contained in PETITIONER's interpleader action.

12.

ROGERS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph twelve (12) of PETITIONER's interpleader action. However, by way of further answer, ROGERS shows that he is entitled to have his money in the trust account of EDDINGS returned to him so that he can complete the purchase of the property that had been scheduled to close at 10:00 a.m., on Friday, October 28th, 2011.

13.

ROGERS shows that Paragraph Thirteen (13) of PETITIONER's interpleader action constitutes a legal conclusion requiring no answer, and therefore, ROGERS neither admits nor denies the allegations contained therein.

14.

ROGERS denies the allegations in Paragraph Fourteen (14) of PETITIONER's interpleader, including the prayers for relief contained therein, having any application to him.

## COUNTERCLAIM AGAINST COLUMBUS BANK AND TRUST COMPANY,

## A DIVISION OF SYNOVUS BANK, PETITIONER

For his counterclaim against PETITIONER, Columbus Bank and Trust Company, a division of Synovus Bank, ROGERS shows to the Court the following:

1.

Columbus Bank and Trust Company, a division of Synovus Bank ("CB&T") is subject to the jurisdiction of this Court and this counterclaim is properly pleaded in this interpleader action.

2.

ROGERS shows that by virtue of his wire transfer of the sum of $89,498.90 to the trust account of the EDDINGS, it now constitutes a portion of the funds paid into the Registry of the Court by PETITIONER. Exhibit "2" attached hereto gave PETITIONER information and knowledge as to ROGERS' funds being transferred into the trust account of Defendant, EDDINGS.

3.

ROGERS further shows that his money wired into EDDINGS trust account has not been returned to him nor has it been paid to anyone else for ROGERS benefit. Thus, ROGERS' $89,498.90 remained in EDDINGS trust account at the time PETITIONER paid said trust account into the Registry of the Court.

4.

ROGERS' closing was scheduled for 10:00 a.m., on Friday, October 28, 2011, when his real estate agent was informed by telephone call shortly before the scheduled closing that it would not occur.

5.

The closing of ROGERS' purchase of the property he had agreed to purchase did not take place.

6.

ROGERS' purchase of the property scheduled to close on October 28, 2011, was a short sale, which has to be closed in sufficient time so that certified funds can be received by Chase Bank on or before December 6th, 2011.

7.

A copy of the purchase and sale agreement is attached hereto as Exhibit "3" and is made a part hereof by reference. The closing date of October 28, 2011, is shown on the document entitled "Amendment to Change Closing/Possession Date Amendment Number One" dated September 30, 2011. Likewise, a copy of the letter from Chase Bank approving the short sale comprises part of the contract and the approval letter from Chase Bank as to approval of the short sale shows the requirement of certified funds being received on or before December 6th, 2011.

8.

Rogers made a good faith wire transfer of his $89,498.90 into EDDINGS trust account for the specific purpose of buying real estate. The specific purpose has now been thwarted, due to the actions of PETITIONER.

9.

ROGERS is entitled to a prompt return of his $89,498.90 inasmuch as there is no uncertainty or doubt as to his funds comprising part of the EDDINGS trust account paid into the Registry of the Court.

10.

If ROGERS does not receive his funds back from the account now in the Registry of the Court, he will be unable to timely close the purchase of said real estate he agreed to buy and will thereby suffer damages. Due to the present circumstances, Rogers cannot determine the amount of damages at this time, but will supply the same by amendment at the time such damages are known.

11.

Wherefore, ROGERS prays that this Court enter an order directing that he be paid the sum of $89,498.90 so that he can proceed with the timely closing of the purchase of the property which should have been closed October 28, 2011, and in the alternative, for a judgment against PETITIONER for not less than $89,498.90 together with any additional damages ROGERS may have sustained due to PETITIONER's actions.

## CROSS CLAIM AGAINST LAW OFFICE OF MICHAEL A. EDDINGS, P.C. ("EDDINGS"),

### ONE OF THE NAMED DEFENDANTS

For his Cross Claim against Defendant, Law Office of Michael A. Eddings, P.C. ("EDDINGS"), ROGERS shows to the Court the following:

### 1.

Defendant EDDINGS is subject to the jurisdiction of this Court and this Cross Claim is properly pleaded in this interpleader action and response thereto.

### 2.

ROGERS shows that he made a wire transfer in the amount of $89,498.90 to the trust account of EDDINGS which monies now constitute a portion of the funds paid into the Registry of the Court by the PETITIONER. Exhibit "2" attached hereto is a copy of such wire transfer

### 3.

ROGERS made the wire transfer into the trust account of Defendant EDDINGS as per instructions received from Defendant EDDINGS office. Exhibit "1" attached hereto is a copy of such wiring instructions.

4.

ROGERS wired the money into Defendant EDDINGS trust account for the purchase price of the property he had agreed to buy. EDDINGS was to use the wired amount on his behalf to pay the purchase price to the Seller of the property ROGERS had contracted to purchase.

5.

ROGERS made a good faith wire transfer to EDDINGS trust account. At the time of doing so, ROGERS had no information, notice, or knowledge of the impaired condition of EDDINGS trust account and the likelihood of him not being able to access his own monies.

6.

ROGERS' closing was scheduled for 10:00 a.m., on Friday, October 28, 2011, when his real estate agent informed him that such scheduled closing would not occur at the previously scheduled time.

7.

Defendant EDDINGS closing of ROGERS' purchase of the property he had agreed to buy did not take place on October 28th, 2011, and has not yet taken place because of ROGERS' funds being in the Registry of the Court.

8.

ROGERS is unable at this time to access his $89,498.90, which was in EDDINGS trust account at the time PETITIONER paid it into the Registry of the Court.

9.

ROGERS' purchase of the property is a short sale which has to be closed in sufficient time so that certified funds can be received by Chase Bank on or before December 6, 2011.

10.

A copy of the purchase and sale agreement is attached hereto as Exhibit "3" and made a part hereof by reference. The scheduled closing date of October 28, 2011, is shown on the document entitled "Amendment to Change Closing/Possession Date Amendment Number One" dated September 30, 2011, which is part of Exhibit "3". Likewise, a copy of the letter from Chase Bank approving the short sale and imposing the requirement of certified funds being received on or before December 6, 2011, is part of Exhibit "3".

11.

If ROGERS does not receive his funds from Defendant EDDINGS trust account now in the Registry of the Court, he will be unable to timely close the purchase of the real estate he agreed to buy, and will thereby suffer damages in an amount that cannot be determined at this time.

12.

ROGERS is entitled to a prompt return of his $89,498.90 inasmuch as there is no uncertainty or doubt as to his funds comprising part of the trust account of Defendant EDDINGS now paid into the Registry of the Court.

13.

EDDINGS either knew or should have known that his trust account was not maintained in the manner required by the State Bar of Georgia. Further, EDDINGS either knew or should have known that his negligence in misusing/mishandling his trust account funds would endanger any additional funds wired into it by his clients, such as ROGERS. Lastly, EDDINGS either knew or should have known that there was a substantial, imminent risk of his trust account being seized, paid into the Registry of the Court, or his office being closed.

14.

EDDINGS failed to use reasonable care in safeguarding ROGERS' funds wired into his trust account thereby causing substantial damage to ROGERS. EDDINGS received such money from ROGERS in his trust account and neglected and failed to use it for its intended purpose.

15.

EDDINGS further failed or neglected to advise ROGERS that EDDINGS trust account was impaired to the point that ROGERS' monies he wired into it may be lost or not accessible to ROGERS for an extended period of time, if at all.

16.

EDDINGS actions or inactions violated his fiduciary obligations to ROGERS, as his client.

17.

ROGERS reserves the right to file an amendment or amendments setting forth the additional grounds for ROGERS'S recovery of his funds and damages, when any additional facts are developed by virtue of further pleadings filed in this action, by independent investigation, or by legal discovery means.

18.

Wherefore, having fully shown that he is entitled to promptly have his $89,498.90 returned to him, ROGERS prays that this Court enter a Judgment against EDDINGS for not less than the sum of $89,498.90, together with any additional damages ROGERS may have suffered due to the actions or inactions of EDDINGS.  ROGERS further prays that this Court enter an Order directing the payment of $89,498.90 to him without any deductions for costs, attorney's fees, or otherwise.

This ___8___ day of November, 2011.

Denney, Pease, Allison & Kirk

BY: _____
Ray L. Allison, Esq.
Georgia Bar No.: 013000
*Attorney for Jerome Rogers*

Post Office Box 2648
Columbus, Georgia 31902-2648
(706) 324-3711

## **VERIFICATION**

MUSCOGEE COUNTY, GEORGIA.

Personally appeared before the undersigned officer, duly authorized by law to administer oaths in and for said State and County, **Jerome Rogers**, who after first being duly sworn, deposes and says, on oath, that the information contained in his Answer, Cross Claim and Counterclaim to Petitioner's Interpleader Petition is true and correct to the best of his information, knowledge and belief.

_____
Jerome Rogers

Sworn to and subscribed before me this
____ day of _November_, 2011.

_____
Notary Public, Muscogee County, Georgia

My Commission Expires: 9/27/15

(SEAL)

# Exhibit "1"



THE LAW OFFICES OF
# MICHAEL A. EDDINGS, P.C.
706.653.7227 O / 706.653.7832 F
www.eddingspc.com



Michael A. Eddings
Admitted in AL, GA, & DC
michael@eddingspc.com

Michael E. Joyner, Of Counsel
Admitted in GA
mejoyner@eddingspc.com

## WIRING INSTRUCTIONS

| | |
|---|---|
| Wiring Instructions to: | CB&T for The Law Office of Michael A. Eddings, P.C. |
| Routing Number: | 061100606 |
| Bank Name: | Columbus Bank and Trust Company |
| Account Name: | The Law Office of Michael A. Eddings, P.C. Escrow Account |
| Account Number: | ████766 |

**Columbus Office:**
860 Brookstone Centre Parkway, Suite B
Columbus, Georgia 31904

**Auburn/Opelika Office:**
3120 Frederick Road, Suite J
Opelika, Alabama 36804

**Atlanta Office - Pinnacle Building:**
3455 Peachtree Road NE, 5th Floor
Atlanta, Georgia 30326

# Exhibit "2"

# Beneficiary Transfer

### Reference Number 20111027-00003476 is Pending Approval.

**Branch** 2107506   SIMONS PLAZA BRANCH

| | | | |
|---|---|---|---|
| **Payment Amount** | 89,498.90 USD | **Rate** | |
| **Debit Amount** | 89,498.90 USD | **Contract Number** | |
| | | **Charge Party** | None |

**Send Date**  27OCT2011            **Value Date**  27OCT2011

## Debit Party

D/1000137874110
JEROME ROGERS POD
305 E PLATT ST
LONG BEACH CA 90805-6421

## Beneficiary

Is Beneficiary a Bank? No
▆▆▆766
THE LAW OFFICE OF MICHAEL A EDDINGS
860 BROOKSTONE CENTRE PARKWAY STE B
COLUMBUS, GA 31904

## Beneficiary's Bank

A/061100606
SYNOVUS BANK
COLUMBUS, GA

## Bank to Bank Information            ## Originator to Beneficiary Information

# Exhibit "3"

# PURCHASE AND SALE AGREEMENT



Georgia Association of REALTORS®

Offer Date: _____ September 20, 2011 _____

2011 Printing

1. **Purchase and Sale.** The undersigned buyer ("Buyer") agrees to buy and the undersigned seller ("Seller") agrees to sell the Property with the following address: _____ 3868 Twin Ridge Lane _____
   City _____ Ellenwood _____, County _____ Clayton _____, Georgia, Zip Code _____ 30294 _____,
   TAX ID/PIN # _____ 12-185D-00A-001 _____ together with all fixtures, landscaping, improvements, and appurtenances (except those identified in any Seller's Property Disclosure Statement attached hereto as not remaining with the Property) and as more particularly described in the Legal Description Paragraph below (all of which is hereinafter collectively referred to as "Property").

2. **Legal Description.** The full legal description of the Property is:
   *[Select A, B, or C below. The sections not marked shall not be a part of this Agreement].*
   ☐ A. attached as an exhibit hereto;
   ☐ B. identical to the legal description for the property contained in the deed recorded in Deed Book _____, Page _____,
   et. seq., _____ County, Georgia records;
   ☒ C. described below:
   Land Lot(s) _____ 185 _____ of the _____ n/a _____ District, _____ 12 _____ Section/ GMD,
   Lot _____ 104 _____, Block _____ n/a _____, Unit _____ n/a _____, Phase/Section _____ of
   _____ Peachtree _____ Subdivision/Development,
   _____ Clayton _____ County, Georgia according to the plat recorded in
   Plat Book _____ 37 _____, Page _____ 178-9 _____, et. seq.; _____ Clayton _____ County, Georgia records.

3. **Purchase Price and Method of Payment.** At closing, Buyer agrees to pay Seller the purchase price of the Property of
   $ _____ 90,000.00 _____, _____ Ninety Thousand _____ U.S. Dollars;
   cash, wire transfer of immediately available funds, or a cashier's check issued for the closing by a federally insured bank, savings bank, savings and loan association or credit union where the funds are immediately available. The above forms of payment shall be deemed to be the equivalent of Buyer paying all cash at closing which shall be the method of payment.

4. **Amount and Deposit of Earnest Money.** Buyer has paid to _____ Coldwell Banker Kennon, Parker, Duncan & Key _____ ("Holder")
   earnest money of $ _____ 2,000.00 _____ check, OR $ _____ n/a _____ cash, which has been received by Holder. The earnest money shall be deposited in Holder's escrow/trust account (with Holder retaining the interest if the account is interest bearing) within five (5) banking days from the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not be required to return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days after receiving such notice to deliver good funds to Holder. In the event Buyer does not timely deliver good funds, Seller shall have the right to terminate this Agreement upon notice to Buyer.

5. **Closing Costs and Other Settlement Expenses.**
   A. Items Paid By Buyer at Closing. At closing, Buyer shall pay the following:
   1. Georgia property transfer tax;
   2. All costs, fees and charges to have the closing attorney search title and prepare: (a) the warranty deed; (b) owner's affidavit; (c) Buyer's powers of attorney; and (d) all promissory notes, deeds to secure debt and other loan documents required by any lender providing financing in the transaction;
   3. All closing costs, tax service charges, recording costs, courier fees, overnight delivery fees, document preparation fees, underwriting fees, delivery, copying and handling charges, and all other costs, fees, charges and amounts to close this transaction otherwise, except as they relate to the clearance of title encumbrances and/or defects necessary for Seller to be able to convey good and marketable title to the Property.
   B. Items Paid By Seller at Closing. At closing, Seller shall pay the following:
   1. The sum of $ _____ 0.00 _____ to be used by Buyer as a contribution for the items in the paragraph above. In addition, Buyer may use the Seller's contribution to pay for, including but not limited to, survey costs, appraisals, insurance (including flood insurance, if applicable), inspections, termite treatment and/or repair guarantee and, if Buyer is obtaining mortgage financing, escrow establishment charges, loan discount points, costs to buy down a loan, and other similar costs (unless any of the same are prohibited by Buyer's mortgage lender). Unspent sums, if any, shall remain with the Seller.
   2. Except as provided above, all sums, costs, charges and fees necessary to clear title encumbrances and/or defects to allow Seller to be able to convey good and marketable title to the Property;
   3. Any extra costs, fees and charges resulting from Seller not being able to attend the closing in person.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                F20, Purchase and Sale Agreement, Page 1 of 7 01/01/11

C. **Prorated Amounts:** Seller and Buyer agree to prorate the following: (1) real estate taxes and community association assessments, if any, for the calendar year in which the sale is closed, as of the date of closing; and (2) all utility bills, solid waste and other fees, as of the date of closing (or the day of possession of Property by Buyer, whichever is later) that are issued after closing and include service for any period of time Property was owned/occupied by Seller or Seller's invitees. In the event real estate taxes are paid at closing based upon an estimated tax bill or tax bill under appeal, Buyer and Seller upon the issuance of the actual tax bill or the appeal being resolved shall promptly make any financial adjustments between themselves as are necessary to prorate the tax bill correctly. This subparagraph shall survive the closing.

6   **Closing and Transfer of Possession.**

A. **Closing:** This transaction shall be closed on _____ 10-3-2011 _____ or on such other date as may be agreed to in writing by the parties. No later than at the conclusion of the closing, Seller shall provide the Buyer with all keys in Seller's possession or under Seller's control, to all locks that shall remain with the Property.

B. **Right to Extend Unilaterally the Closing Date:** Buyer or Seller may unilaterally extend the closing date for seven (7) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (except for liens, judgments, and deeds to secure debt that can be satisfied through the payment of money or by bonding off the same); or (2) Buyer's mortgage lender, if any, (including in "all cash" transactions) or the closing attorney cannot fulfill their respective obligations by the date of closing due to no fault of Buyer. In such event, Buyer and Seller consent to the closing attorney and/or any such mortgage lender disclosing to the parties and their Brokers the basis for the delay. The exercise of the right to extend unilaterally the closing date by either party shall cause the right to extend unilaterally the closing date to terminate and no longer be a part of this Agreement.

C. **Possession:** Buyer agrees to allow Seller to retain possession of Property until and through: *[Select one. The sections not marked shall not be a part of this Agreement.]*
☒ 1. the closing; OR ☐ 2. ____ hours after the closing; OR ☐ 3. ____ days after the closing at ____ o'clock ____ .m.

7.  **Closing Attorney.** This transaction shall be closed by the law firm of _____ **Michael Eddings** _____
_____. If Buyer is given the right to select a law firm from a mortgage lender's approved list of closing attorneys, Buyer agrees to select said law firm. If the law firm named above is not on the mortgage lender's approved list, and cannot be added in time to close this transaction, Buyer may select another law firm from lender's approved list to close this transaction. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the: ☐ Buyer OR ☐ Seller. If the closing attorney declines to represent the party selected, the party may select a different closing attorney.

8.  **Title.**

A. **Warranty:** Seller warrants that at the closing Seller will convey good and marketable title to said Property by general warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.

B. **Examination:** Buyer may examine title and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.

C. **Survey:** A survey of Property is ☐ OR ☒ not attached to this Agreement as an exhibit. Notwithstanding any other provision to the contrary contained herein, Buyer shall have the right to terminate this Agreement upon notice to Seller if a new survey performed by a surveyor licensed in Georgia is obtained which is materially different from any survey attached hereto as an exhibit with respect to Property. The term "materially different" shall not apply to any improvements constructed by Seller in their agreed-upon locations subsequent to Binding Date Agreement. Matters revealed in said survey shall not relieve the warranty of title obligations of Seller referenced above.

9.  **Risk of Damage to Property.** Seller warrants that at the time of closing or upon the granting of possession, if at a time other than at closing, Property will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for normal wear and tear, and changes made to the condition of Property pursuant to the written agreement of Seller and Buyer. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement not later than fourteen (14) days from receipt of the above notice, except that any party who causes the Property to be destroyed or substantially damaged as the result of that party's criminal conduct shall forfeit the right to terminate this Agreement and shall be in default hereunder. If Buyer or Seller does not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

10. **Inspection.**

A. **Right of Buyer to Inspect Property:** Buyer and/or Buyer's representatives shall have the right to enter Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test and survey Property. Seller shall cause all utility services and any pool, hot tub and similar items to be operational so that Buyer may complete all inspections under this agreement. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries, and damages arising out of or related to the exercise of these rights.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                    F20, Purchase and Sale Agreement, Page 2 of 7 01/01/11

**B. Duty of Buyer to Inspect Neighborhood:** Buyer acknowledges that: (1) in every neighborhood there are conditions which different buyers may find objectionable and (2) Buyer has had the full opportunity to become acquainted with all existing neighborhood conditions (and proposed changes thereto) which could affect the Property including without limitation land-fills, quarries, high-voltage power lines, cemeteries, airports, prisons, stadiums, odor and/or noise producing land uses, crime, schools serving the Property, political jurisdictional maps and land use and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.

## 11. Property Sold Subject to Due Diligence Period or "As-Is".
*[Select Section A. or B. below. The sections not marked shall not be a part of this Agreement.]*

☒ **A. Property Sold Subject to Due Diligence Period.**

1. **Contract is Option Contract.** For and in consideration of the additional payment of Ten Dollars ($10) by the Buyer to the Seller, the receipt and sufficiency of which is hereby acknowledged, Seller does hereby grant Buyer the option of terminating this Agreement, for any reason, for a _____15_____ day period from the Binding Agreement Date ("Due Diligence Period"). This Agreement shall be an option contract until the Due Diligence Period has ended without Buyer terminating the same.

2. **Purpose of Due Diligence Period.** During the Due Diligence Period, Buyer may, but shall not be required to: (a) arrange any loans Buyer needs to complete the purchase of the Property; and (b) conduct at Buyer's sole expense whatever evaluations, inspections, appraisals, examinations, surveys, and testing, if any, Buyer deems appropriate to determine whether Buyer's option to terminate this Agreement should be exercised. This shall include but not be limited to testing for lead-based paint and/or lead-based paint hazards, inspecting for active infestation of and/or damage from termites and other wood destroying organisms and determining if the Property or the improvements thereon are in a flood plain. During the Due Diligence Period, Buyer may also propose an amendment(s) to this Agreement to address any concerns of Buyer with the Property.

3. **Right to Terminate.** If Buyer decides to exercise Buyer's option to terminate this Agreement, Buyer must give notice of the same to Seller prior to the end of the Due Diligence Period. If Buyer fails to give such notice in a timely manner, the Due Diligence Period shall terminate and Buyer shall be deemed to have accepted the Property "as-is." The expiration of the Due Diligence Period shall not terminate any other contingencies to which this Agreement may be subject.

4. **Warranties of Buyer.** Buyer warrants that Buyer is ☐ OR is not ☐ currently under contract (including option contracts) to purchase other real property. Buyer warrants that during the Due Diligence Period Buyer shall ☐ have the right to enter into other such contracts OR ☐ not enter into any other such contracts. Buyer shall be in default of the Agreement if Buyer breaches Buyer's warranties in this subparagraph.

☐ **B. Property Sold "As Is."** All parties agree that Property is being sold "as is," with all faults including but not limited to damage from termites and other wood destroying organisms and lead-based paint and lead-based paint hazards. Seller shall have no obligation to make any repairs or replacements to Property.

## 12. Return and Disbursement of Earnest Money.

**A. Return of Earnest Money to Buyer:** Subject to the Disbursement of Earnest Money paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in this Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.

**B. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties fifteen (15) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the fifteen (15) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new fifteen (15) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made.

Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that Seller has terminated the Agreement due to Buyer's default; and (2) sends the required fifteen (15) day notice of the proposed disbursement to Buyer and Seller. If the check is accepted and deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer. Such liquidated damages are not a penalty and are instead a reasonable preestimate of Seller's actual damages, which damages are difficult to ascertain. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required fifteen (15) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.

**C. Interpleader:** If there is a dispute over the earnest money which the parties cannot resolve after a reasonable period of time, and where Holder has a bona fide question as to who is entitled to the earnest money, Broker may interplead the earnest money into a court of competent jurisdiction. Holder shall be reimbursed for and may deduct from any funds interpleaded, its costs and expenses, including reasonable attorney's fees actually incurred. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees and court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.

F20, Purchase and Sale Agreement, Page 3 of 7 revised 01/01/11

**D. Hold Harmless:** All parties hereby agree to indemnify and hold Holder harmless from and against all claims, causes of action, suits and damages arising out of or related to the performance by Holder of its duties hereunder. All parties further covenant and agree not to sue Holder for damages relating to any decision of Holder to disburse earnest money made in accordance with the requirements of this Agreement.

**13. Agency and Brokerage.**

**A. Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and, where the context would indicate, the broker's affiliated licensees. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

1. **No Agency Relationship.** Buyer and Seller acknowledge that, if they are not represented by a Broker, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
2. **Listing Broker.** Broker working with the Seller is identified on the signature page as the "Listing Broker"; and said Broker is ☒ OR, is not ☐ representing Seller;
3. **Selling Broker.** Broker working with Buyer (including in transactions where Broker is representing Seller) is identified on the signature page as "Selling Broker;" and said Broker is ☒ OR, is not ☐ representing Buyer; and
4. **Dual Agency or Designated Agency.** If Buyer and Seller are both being represented by the same Broker, a relationship of either designated agency ☐ OR, dual agency ☐ shall exist.

   a. **Dual Agency Disclosure.** *[Applicable only if dual agency has been selected above]*
   Buyer and Seller are aware that Broker is acting as a dual agent in this transaction and consent to the same. Buyer and Seller have been advised that:
   (1) in serving as a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
   (2) Broker will disclose all adverse, material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
   (3) Buyer and Seller do not have to consent to dual agency and, the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
   (4) Notwithstanding any provision to the contrary contained herein, Buyer and Seller each hereby direct Broker, while acting as a dual agent, to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

   b. **Designated Agency Assignment.** *[Applicable only if the designated agency has been selected above]*
   Broker has assigned _____n/a_____ to work exclusively with Buyer as Buyer's designated agent and _____n/a_____ to work exclusively with Seller as Seller's designated agent. Each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.

**B. Brokerage:** Seller has agreed to pay Listing Broker(s) a real estate commission pursuant to that certain brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). Pursuant to the terms of the Listing Agreement, the Listing Broker has agreed to share that commission with the Selling Broker.

The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. If more than one Broker is involved in the transaction, the closing attorney is directed to pay each Broker its respective portion of said commission. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the Seller of the obligation to pay the remainder thereof after the closing unless the Broker(s) have expressly and in writing agreed to accept the lesser amount in full satisfaction of the Broker(s) claim to a commission.

**C. Material Relationship Disclosure:** Brokers and/or their affiliated licensees have the following material relationship(s) with either Buyer or Seller as follows: _NONE_

**14. Disclaimer.** Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers other than what is expressly included in this Agreement and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including but not limited to the following: any matter which could have been revealed through a survey, title search or inspection of Property; the condition of Property, any portion thereof, or any item therein; building products and construction and repair techniques; the necessity or cost of any repairs to Property; mold; hazardous or toxic materials or substances; termites and other wood destroying organisms; the tax or legal consequences of this Agreement and transaction; the availability and cost of utilities or community amenities; the appraised or future value of Property; any condition(s) existing off Property which may affect Property; the terms, conditions and availability of financing; and the uses and zoning of Property whether permitted or proposed. Buyer and Seller acknowledge that Brokers are not experts with respect to the above matters and that, if any of these matters or any other matters are of concern to them, they should seek independent expert advice relative thereto. Buyer and Seller acknowledge that Brokers shall not be responsible to monitor or supervise any portion of any construction or repairs to Property and that such tasks clearly fall outside the scope of real estate brokerage services.

**15. Lead-Based Paint.** To the best of Seller's knowledge, a portion of any residential dwelling on the Property was ☐ OR was not ☒ built prior to 1978. If any portion of a residential dwelling was built prior to 1978, the Lead-Based Paint Exhibit must be and is hereby attached as an exhibit to this Agreement by Seller. For the purposes of this paragraph, the term "residential dwelling" shall include any painted fixture, component or material used therein that was built or manufactured prior to 1978. Any repair work in which lead-based paint is disturbed should be done in accordance with the EPA's Renovate Right brochure and other related materials.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.          F20, Purchase and Sale Agreement, Page 4 of 7 01/01/11

**16. Notices.**

A. **All Notices Must Be In Writing.** All notices, including but not limited to offers, counteroffers, acceptances, amendments, demands, notices of termination and other notices, required or permitted hereunder shall be in writing, signed by the party giving the notice. It is the intent of the parties that the requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding.

B. **Method of Delivery of Notice.** Subject to limitations and conditions set forth herein, notices may only be delivered: (1) in person; (2) by an overnight delivery service, prepaid; (3) by facsimile transmission (FAX); (4) by registered or certified U. S. mail, prepaid, return receipt requested; or (5) by e-mail.

C. **When Notice is Deemed Received.** Except as may be provided herein, a notice shall not be deemed to be given, delivered or received until it is actually received by the party to whom the notice was intended or that person's authorized agent. Notwithstanding the above, a notice sent by FAX shall be deemed to be received by the party to whom it was sent as of the date and time it is transmitted to either the party or the party's authorized agent provided that the sending FAX produces a written confirmation showing the correct date and the time of the transmission and the telephone number referenced herein to which the notice should have been sent.

D. **When Notice to Broker is Notice to Broker's Client.** Except in transactions where the Broker is practicing designated agency, notice to the Broker or the affiliated licensee of Broker representing a party in the transaction shall for all purposes herein be deemed to be notice to that party. Said Broker and affiliated licensee shall be authorized agents of the party for the purpose of receiving notice. In any transaction where the Broker is practicing designated agency, only notice to the affiliated licensee designated by Broker to represent the party in the transaction shall be notice to that party. Personal delivery of notice may only be delivered to the party intended to receive the same or that party's authorized agent.

E. **Notice by Fax or E-Mail to a Broker or Affiliated Licensee of a Broker.** Notices by fax or e-mail to a Broker or the affiliated licensee of a Broker may only be sent to the e-mail address or fax number, if any, of the Broker or the affiliated licensee of the Broker set forth in the Broker/Licensee Contact Information section of the signature page of this Agreement or subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures set forth herein. If no fax number or e-mail address is included in the Broker/Licensee Contact Information section of the signature page of this Agreement (or is subsequently provided by the Broker or the affiliated licensee of Broker following the notice procedures) then notice by the means of communication not provided shall not be valid for any purpose herein. Notice to a Broker or the affiliated licensee of Broker who is working with, but not representing a party, shall not be deemed to be notice to that party. Any party sending notice by FAX or email shall send an original copy of the notice if so requested by the other party. A faxed or emailed signature of a party shall constitute an original signature binding upon that party.

F. **Notice to Unrepresented Party.** A party who is not represented by a Broker in the transaction may receive notices by Fax or e-mail at the e-mail address or fax number, if any, of the party set forth below or at such other fax number or e-mail address as the party may provide following the notice procedures set forth herein. If no e-mail address or fax number is provided for below, or is subsequently provided by the party following the notice procedures set forth herein, then notice through the means of communication not provided shall not be valid for any purpose herein.

Unrepresented Buyer: _____   Unrepresented Seller: _____
Fax No. _____   Fax No. _____
E-Mail Address: _____   E-Mail Address: _____

**17. Default.**

A. **Rights of One Party Against Another Party:** A party defaulting under this Agreement shall be liable for the default. The nondefaulting party may pursue any lawful remedy against the defaulting party.

B. **Rights of Broker Against Defaulting Party:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the broker(s) actual damages and are not a penalty. In the event a real estate broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the real estate broker shall only have such remedies against the defaulting party as are provided for in such agreement.

**18. Other Provisions.**

A. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

B. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

C. **Binding Effect, Entire Agreement, Modification, Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended, modified or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written agreement of Seller. Any assignee shall fulfill all the terms and conditions of this Agreement.

D. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) warranty of title; and (3) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

E. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of the State of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.   F20, Purchase and Sale Agreement, Page 5 of 7 01/01/11

F. **Time of Essence:** Time is of the essence of this Agreement.

G. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

H. **Binding Agreement Date:** The Binding Agreement Date in this Agreement shall be the date when the party making the last offer, or the Broker (except in a designated agency transaction) or affiliated licensee of Broker representing that party as a client, receives notice that the offer has been accepted. This party (or the Broker or affiliated licensee representing this party as a client) shall fill in the Binding Agreement Date below and promptly give notice of this date to the other party. Filling in the Binding Agreement Date shall not be deemed to be a counteroffer.

I. **Responsibility to Cooperate:** All parties agree to take all actions and do all things reasonably necessary to fulfill the terms and conditions of this Agreement in good faith and in a timely manner. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements as are required at closing to meet the requirements of any lender(s) and of federal and state law.

J. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") makes certain standard real estate forms available to its members. These GAR forms are frequently provided to the parties in real estate transactions by the REALTORS® with whom they are working. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

19. **Receipt By Buyer of Consumer Protection Brochure.** Buyer acknowledges that Buyer ☐ has OR ☐ has not received a copy of the GAR brochure entitled "Protect Yourself When Buying a Home" (Form F13).

20. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control.

☐ Legal Description of the Property as Exhibit "_____"

☐ Financing Contingency as Exhibit "_____"

☐ The ☐ FHA Loan Exhibit OR ☐ VA Loan Exhibit OR ☐ Conventional Financing Exhibit as Exhibit "_____"

☐ A Survey of Property as Exhibit "_____"

☐ Appraisal Contingency as Exhibit "_____"

☐ Seller's Property Disclosure Statement as Exhibit "_____"

☒ Lead-Based Paint Exhibit as Exhibit "___A___"

☐ Source of Buyer's Funds as Exhibit "_____"

☐ Sale or Lease of Buyer's Property Contingency as Exhibit "_____"

☐ Back-up Agreement Contingency as Exhibit "_____"

☐ Community Association Disclosure as Exhibit "_____"

☐ Other _____

☐ Other _____

☐ Other _____

☐ Other _____

☐ Other _____

**SPECIAL STIPULATIONS** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1. Offer is contingent on Buyer closing on current residence on September 28, 2011.
2. Seller to ensure all systems including A/C unit are working properly.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.    F20, Purchase and Sale Agreement, Page 6 of 7 01/01/11

Additional Special Stipulations are ☐ or are not ☒ attached.

Time Limit of this Offer: The terms of this Agreement shall constitute an offer ("Offer") which shall expire at _____ o'clock _____ m. on the date of _____ unless prior to that time the Offer is accepted in writing and notice of the acceptance is delivered to the party who made the Offer.

_____          _____
Buyer's Signature                         Seller's Signature

          Jerome Rogers
Print or Type Name                        Print or Type Name

_____          _____
Buyer's Signature                         Seller's Signature

Print or Type Name                        Print or Type Name

Coldwell Banker Kennon, Parker, Duncan & Key      GRACE REALTY GROUP
Selling Broker                            Listing Broker

By: _____              By: VALENCIA WALKER
Broker or Broker's Affiliated Licensee        Broker or Broker's Affiliated Licensee

     Chester Randolph                          VALENCIA WALKER
Print or Type Name                        Print or Type Name

   852        H-12575                        GRCE01        H-
MLS Office Code  Brokerage Firm License Number    MLS Office Code  Brokerage Firm License Number

Multiple Listing Number _____4267935_____

Selling Broker/Licensee Contact Information:      Listing Broker/Licensee Contact Information:

Phone#      706-256-1500                  Phone#  678-889-1818

Fax#        706-653-2918                  Fax#   678-889-1762

E-Mail  chester.randolph@coldwellbanker.com      E-Mail  BROKER@GRACELEB.COM
                                                           172136
          278420
Selling Agent's Georgia Real Estate License Number    Listing Agent's Georgia Real Estate License Number

Member of:    Columbus Board    of REALTORS®      Member of:  ATLANTA BOARD  of REALTORS®

Binding Agreement Date: The Binding Agreement Date in this transaction is the date of  SEPTEMBER 25, 2011
and has been filled in by  VALENCIA WALKER

Copyright 2011 by Georgia Association of REALTORS®, Inc.          F20, Purchase and Sale Agreement, Page 7 of 7 01/01/11

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

## LEAD-BASED PAINT
## EXHIBIT "____A____"

2011 Printing

This Exhibit is part of the Agreement with an Offer Date of ____September 20, 2011____ for the purchase and sale of that certain Property known as: ____3368 Twin Ridge Lane____ _____ Ellenwood _____ Georgia ____30294____

1. **Purchase and Sale of Lease Transaction Lead Warning Statement.**
Every purchaser of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

2. **Seller's/Lessor's Disclosure.** _____ Initials of Seller / Lessor
   A. Presence of lead-based paint and/or lead-based paint hazard (check one below):
   [ ] Known lead-based paint and/or lead-based paint hazards are present in the housing (explain below):
   _____
   [ ] Seller/Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
   B. Records and Reports available to the Seller/Lessor (check one below):
   [ ] Seller/Lessor has provided the Buyer/Lessee with all the available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list document below):
   [X] Seller/Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

3. **Buyer's/Lessee's Acknowledgment.** _____ Initials of Buyer / Lessee
   A. Buyer/Lessee has received copies of all information, if any, listed above.
   B. Buyer/Lessee has read and understands the above lead warning statement and has received the pamphlet "Protect Your Family From Lead In Your Home."
   C. Buyer/Lessee has (check one below):
   [X] Received a ten 10 (ten) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
   [ ] Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

4. **Broker's Acknowledgment.** _____ Initials of Broker or Licensee of Broker
   Broker has informed the Seller/Lessor of the Seller/Lessor's obligations under 42 U.S.C. § 4852(d) and is aware of his/her responsibility to ensure compliance.

5. **Certification of Accuracy.**
   The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

   _____  9/13/11          Jienne Rogers        9-20-2011
   Seller/Lessor     Date             Buyer/Lessee  Jerome Rogers   Date

   Vernie Walker     9/14/11          Chet Rtt             9/20/U
   Listing Broker    Date             Selling/Leasing Broker   Date
                                      Chester Randolph

NOTE: It is the intent of this Exhibit that it be applicable to both the sale and leasing of Property. The use of terms like "Buyer/Lessee" shall mean either a Buyer or a Lessee or both as the context may indicate.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                      FE4, Lead-Based Paint Exhibit  03/19/11

Form generated by: TrueForms™   www.TrueForms.com   805-499-9612

OCT-06-2011 05:39 PM Mark A Velasco                626 359 3258        P.02



**Grace**
*Realty Group*

# SELLER'S PROPERTY DISCLOSURE STATEMENT
## EXHIBIT "A_____"

Georgia
Association
of REALTORS®

2011 Printing

This Seller's Property Disclosure Statement ("Statement") is an exhibit to the Purchase and Sale Agreement with an Offer Date of _____ for Property known as or located at **3848 Twin Ridge Lane** _____, **Kingwood** _____, Georgia **30284**. This Statement contains Seller's disclosures to Buyer regarding the present condition of the Property, certain past repairs and the history of the Property.

**A. INSTRUCTIONS TO SELLER IN COMPLETING THIS DISCLOSURE STATEMENT.** In completing this Disclosure Statement, Seller agrees to:
(1)  answer all questions in reference to the Property (which, unless otherwise noted, shall include the improvements thereon);
(2)  leave no question unanswered;
(3)  answer all questions fully and accurately based upon the best knowledge and belief of all Sellers in the Purchase and Sale Agreement;
(4)  fully explain in the Additional Explanations paragraph any questions to which the answer is "yes" or "other" referencing the number of the question for which the additional explanation is being given; and
(5)  promptly revise the Statement and provide a copy of the same to the Buyer and any Broker involved in the transaction if prior to closing there are any material changes in the answers to any of the questions.

**B. HOW THIS STATEMENT SHOULD BE USED BY BUYER.** The answers of Seller below should not be a substitute for Buyer conducting a careful, independent evaluation of the Property. Caveat emptor or buyer beware is the law in Georgia. Buyer is expected to use reasonable care to identify defects in the Property and satisfy herself or himself that the Property is suitable for Buyer's needs and purposes. If an independent evaluation of the Property reveals potential problems or areas of concern that would cause a reasonable buyer to investigate further, Buyer may not have legal recourse if Buyer fails to investigate further.

**C. DISCLOSURES.**

|  | Yes | No | Don't Know |
|---|---|---|---|
| **1. OCCUPANCY:** | | | |
| (a)  Is the Property vacant? | | ✓ | |
|       If yes, how long has it been since Seller occupied the Property? _____ | | | |
| (b)  Is the Property or any portion thereof leased? | | | ✓ |
| **2. SOIL, TREES, SHRUBS AND BOUNDARIES:** | | | |
| (a)  Are there now or have there been any landfills (other than foundation backfill), graves, burial pits, caves, mine shafts, trash dumps or wells (in use or abandoned) on the Property? | | | ✓ |
| (b)  Is there now or has there been any soil movement, subsidence, settlement, upheaval, or erosion? | | | ✓ |
| (c)  Are there presently any diseased or dead trees on the Property? | | | ✓ |
| (d)  Are there presently any encroachments onto the Property, unrecorded easements affecting the Property or boundary line disputes with a neighboring property owner? | | | ✓ |
| (e)  Do any of the improvements on the Property encroach onto a neighboring property? | | | ✓ |
| **3. TERMITES, DRY-ROT, PESTS, AND WOOD-DESTROYING ORGANISMS:** | | | |
| (a)  Is there now or has there been any damage to the Property caused by squirrels, mice, possums or other infiltrating animals; termites; bees, ants and other insects, fungi and dry-rot; or other wood-destroying organisms? | | ✓ | |
| (b)  Is the Property presently under a transferable bond, warranty or service contract for termites or other wood destroying organisms by a licensed pest control company? | | | ✓ |
|       If yes, check type of coverage: ☐ re-treatment and repair;  ☐ re-treatment or ☐ periodic inspections only. | | | |
| (c)  Is there a cost to transfer the bond, warranty or service contract? | | | ✓ |
|       If yes, what is the cost? $ _____ | | | |
| (d)  Is there a cost to maintain the bond, warranty or service contract? | | | ✓ |
|       If yes, what is the annual cost? $ _____ Renewal Date _____ | | | |
| (e)  Have any termites/pest control reports or treatments been done on or to the Property in the last five (5) years? | ✓ | | |
| (f)  Is there any exterior untreated wood, hard coat stucco, rigid board insulation, plastic foam or siding or cladding (other than stone, brick or concrete) in contact with the soil or within six inches of the finished grade? | | | ✓ |

Copyright© 2011 by Georgia Association of REALTORS®, Inc.        F50, Seller's Property Disclosure Statement Exhibit, Page 1 of 5, 03/10/11

|  | Yes | No | Don't Know |
|---|---|---|---|

**4. STRUCTURAL ITEMS, ADDITIONS AND ALTERATIONS:**

(a) What year was the main residential dwelling constructed? _____2006_____

(b) Is there now or has there been any movement, shifting, settling (other than normal settling), cracking, or structural problems with any dwelling or garage on the Property? — No ✓

(c) Has any additional bracing, underpinning, or other structural reinforcements been added to any dwelling or garage on the Property? — No ✓

(d) Are there now or have there been any problems with driveways, walkways, patios, decks or retaining walls on the Property? — No ✓

(e) Have there been any additions, structural changes, or any other major alterations to the original improvements on the Property? — No ✓

(f) Has any work been done on the Property where required permits and/or approvals (public or private) were not obtained? — No ✓

(g) Has any work been done to the Property that was not in compliance with the then applicable building codes or zoning regulations? — No ✓

**5. LEAD-BASED PAINT:** Was any part of the residential dwelling on the Property or any painted, component, fixture or material used therein constructed or manufactured prior to 1978? — No ✓
If you have answered "Yes" or "Don't Know" the Lead-Based Paint Exhibit F54 must be executed by the parties and the Lead-Based Paint Pamphlet F55 must be provided to the buyer.

**6. ROOF, GUTTERS AND DOWNSPOUTS:**

(a) Approximate age of roof _____5_____ years.

(b) Has the roof, or any part thereof, been repaired or replaced during Seller's ownership? — No ✓

(c) Are there now or have there been any roof leaks or other problems with the roof, roof flashing, roof underlayment, gutters, leaf guards or downspouts? — No ✓

**7. FLOODING, DRAINAGE, MOISTURE AND SPRINGS:**

(a) Are there now or have there been any water leaks, water accumulation, or dampness within the basement, crawl space or other parts of any dwelling or garage at or below grade? — No ✓

(b) Have any repairs been made to control any water leaks, water accumulation or dampness in the basement, crawl space, or other parts of any dwelling or garage at or below grade? — No ✓

(c) Is any part of the Property or any improvements thereon presently located in a 100 year Special Flood Hazard Area where there is at least a 1% chance of a flood in any given year? — No ✓

(d) Does water presently stand on any part of Property for more than one (1) day after it has rained? — No ✓

(e) Has there ever been any flooding on any part of the Property? — No ✓

(f) Are there now or have there been any streams that do not flow year round or springs on the Property? — No ✓

(g) Are there any dams, retention ponds, storm water detention basins, or other similar facilities on the Property? — No ✓

**8. SEWER/PLUMBING RELATED ITEMS:**

(a) What is the drinking water source: ☑ public  ☐ private  ☐ well on property

(b) If the drinking water is from a well, has the water been tested within the past 12 (twelve) months? — ✓

(c) What type of sewage system serves the Property: ☑ public  ☐ private  ☐ septic tank

(d) If the Property is served by a septic system, how many bedrooms was the septic system approved for by local governmental authorities? _____

(e) Is the main dwelling served by sewage pump? — No ✓

(f) Has any septic tank or cesspool on Property ever been professionally serviced? — ✓
If yes, please give the date of last service: _____

(g) Are there now or have there been any leaks, backups, tree roots in lines or other similar problems with to any portion of the plumbing, water or sewage systems? — No ✓

(h) Is there presently any polybutylene plumbing, other than the primary service line, on the Property? — No ✓

(i) Are any of the plumbing fixtures in any dwelling or garage not low water flow fixtures? — No ✓

(j) Has any water line or fixture on the Property ever frozen in cold weather? — No ✓

**9. SYSTEMS AND COMPONENTS:**

(a) What is the primary heating system serving the main dwelling?
☑ natural gas, forced air  ☐ heat pump  ☐ electric furnace  ☐ radient heating  ☐ other

(b) Does the primary heating system not serve any enclosed part of the main dwelling (excluding the attic, crawl space, garage or basement)? — No ✓

(c) What is the approximate age of the primary heating system serving the Property: _____5_____ years

(d) What is the primary air conditioning system serving the main dwelling? ☐ gas ☑ electric ☐ other

(e) Does the primary air conditioning system not serve the entire enclosed portion of the main dwelling (excluding the attic, crawl space, garage or basement)? — No ✓

(f) What is the approximate age of the primary air conditioning system(s) _____5_____ years

(g) How is the hot water heated in the main dwelling? ☐ gas ☑ electric ☐ solar

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| (h) | Is any water heater tankless? |  |  |  |
| (i) | What is the approximate age of the primary water heater? _____ years |  |  |  |
| (j) | Does any dwelling or garage have aluminum wiring other than in the primary service line? |  |  | ✓ |
| (k) | Is there any system or appliance which is leased or for which the buyer must pay a transfer fee to continue to use? If yes, what is the transfer fee? $ _____ If yes, what is the current use fee to be paid by the Buyer? $ _____ |  | ✓ |  |
| (l) | Are any fixtures or appliances included in the sale in need of repair or replacement? |  | ✓ |  |
| (m) | Are any fireplaces presently not working, decorative only or in need of repair? |  | ✓ |  |
| (n) | When was each fireplace, wood stove or chimney/flue last cleaned? Date(s): |  | ✓ |  |
| (o) | Is any part of the exterior surface of any dwelling or garage on the Property presently constructed of synthetic stucco? |  | ✓ |  |
| (p) | Are there now or have there been any problems with siding or exterior building surfaces swelling, chipping, cracking, delaminating or retaining moisture? |  |  | ✓ |
| (q) | Are any windows designed to be operable, painted shut or fail to open and close? |  | ✓ |  |
| (r) | Was any of the drywall used in the Property made in China and/or have a foul smelling odor? |  |  | ✓ |

### 10. ENVIRONMENTAL/HEALTH/SAFETY CONCERNS:

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| (a) | Are there now or have there been any underground tanks or toxic or hazardous substances such as asbestos, urea-formaldehyde, methane gas, radioactive material, radon, mold, benzene or other environmental contaminates on or in the Property? |  |  | ✓ |
| (b) | Has the Property ever been tested for radon, lead, mold or any other potentially toxic substances? |  | ✓ |  |
| (c) | Is there now or has there been any mold on interior heated and cooled portions of any dwelling on the Property other than on the walls, floors or ceilings of showers, sinks, and bathtubs? |  | ✓ |  |
| (d) | Are there any exterior doors which either do not lock or for which the key has been lost? |  | ✓ |  |

### 11. LITIGATION AND INSURANCE:

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| (a) | Does the Property contain any building products which are or have been the subject of class action lawsuits, litigation or legal claims alleging that the product is defective? |  |  | ✓ |
| (b) | Is there now or has there been any litigation involving the Property or any improvement therein alleging negligent or improper construction, defects, termites, and/or title problems? |  |  | ✓ |
| (c) | Has there been any award or payment of money in lieu of repairs for such a defective building product? |  |  | ✓ |
| (d) | Has any release been signed that would limit a future owner from making any claims in connection with Property? |  |  | ✓ |
| (e) | Has there been any fire, flood or wind damage which required repairs to Property in excess of $500.00? |  | ✓ |  |
| (f) | Has there been any insurance claims filed on Property since you owned it? If yes, how many? _____ |  | ✓ |  |

### 12. OTHER MATTERS:

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| (a) | Have there been any inspections of the Property in the past year? If yes, by whom and of what type? _____ |  |  | ✓ |
| (b) | Was any dwelling on the Property or portion thereof (excluding mobile, modular and manufactured dwelling) moved to the site from another location? |  | ✓ |  |
| (c) | Is any portion of the main dwelling a mobile, modular or manufactured home? |  | ✓ |  |
| (d) | Has the Property been designated as historic or in a historic district where modifications and additions are limited? |  | ✓ |  |
| (e) | Are there any other adverse, material facts pertaining to the physical condition of the Property that have not otherwise been disclosed? |  | ✓ |  |

### 13. COVENANTS, FEES AND ASSESSMENTS:

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| | Is the Property part of a condominium, community association or subject to a Declaration of Covenants, Conditions and Restrictions (CC & Rs) or other similar restrictions? (IF YES, SELLER IS INSTRUCTED TO ADDITIONALLY FILL OUT AND PROVIDE TO BUYER A COMMUNITY ASSOCIATION DISCLOSURE EXHIBIT, GAR FORM 123). |  | ✓ |  |

### 14. AGRICULTURAL DISCLOSURE:

|  |  | Yes | No | Don't Know |
|---|---|---|---|---|
| | Is Property within, partially within, or adjacent to any property zoned or identified on an approved county land use plan as agricultural or forestry use? |  | ✓ |  |

It is the policy of this state and this community to conserve, protect, and encourage the development and improvement of farm and forest land for the production of food, fiber, and other products, and also for its natural and environmental value. This notice is to inform prospective property owners or other persons or entities leasing or acquiring an interest in real property that property in which they are about to acquire an interest lies within, partially within, or adjacent to an area zoned, used, or identified for farm and forest activities and that farm and forest activities occur in the area. Such farm and forest activities may include intensive operations that cause discomfort and inconveniences that involve, but are not limited to, noises, odors, fumes, dust, smoke, insects, operations of machinery during any 24 hour period, storage and disposal of manure, and the application by spraying or otherwise of chemical fertilizers, soil amendments, herbicides, and pesticides. One or more of these inconveniences may occur as the result of farm or forest activities which are in conformance with existing laws and regulations and accepted customs and standards.

Copyright© 2011 by Georgia Association of REALTORS®, Inc                    F50, Seller's Property Disclosure Statement Exhibit, Page 5 of 6, 03/01/11

**16. ADDITIONAL EXPLANATIONS FOR ALL QUESTIONS ANSWERED "YES" or "OTHER". [Explanations should reference the number of the question for which more detailed information is being provided.]**

Additional pages are ☐ or are ☐ not attached.

**D. FIXTURES/ITEMS:** (Check (☑) only those fixtures/items below that are included in the sale of Property. Unless otherwise indicated, if there is more than one item (such as a second refrigerator or two chandeliers or three window selections), all such fixtures/items attached are included in the sale of Property. These fixtures/items listed below that are not checked shall not be included in the sale of Property.)

- ☐ Above Ground Pool
- ☐ Air Conditioning Window Unit
- ☐ Air Purifier
- ☑ Alarm System (Burglar)
  - ☐ Leased ☐ Owned
- ☑ Alarm System (Smoke/Fire)
  - ☐ Leased ☑ Owned
- ☐ Arbor
- ☐ Attic Fan (Whole House Fan)
- ☐ Attic Ventilator Fan
- ☐ Awning
- ☐ Basement/Crawl Space Ventilator Fan
- ☐ Basketball Post & Goal
  - ☐ Built-in ☐ Free Standing
- ☐ Birdhouse
- ☐ Boat Dock servicing the Property
- ☐ Remote Control
- ☐ Carbon Monoxide Detector
- ☐ Ceiling Fan
- ☐ Remote Control
- ☐ Chandelier
- ☐ Dehumidifier
- ☑ Dishwasher
- ☑ Built-in ☐ Free Standing
- ☐ Dog House
- ☐ Doorbell
- ☐ Door & Window Hardware
- ☐ Gas ☐ Electric

- ☐ Foyer (Invisible)
  - ☐ Foyer Pet Collar
- ☑ Fireplace
  - ☑ Gas Log
  - ☐ Gas Log(s)
  - ☐ Gas Starter Key
  - ☐ Remote Control
  - ☐ Screen/Door
  - ☐ Wood Burning Insert
- ☐ Fire Sprinkler System
- ☐ Flag Pole
- ☐ Garage Door Opener
  - ☐ Remote Control
- ☐ Gas Grille
  - ☐ Built-in ☐ Free Standing
- ☐ Gates
- ☐ Gazebo
- ☐ Hot Tub
- ☐ Humidifier
- ☐ Ice Maker
  - ☐ Built-in ☐ Free Standing
- ☐ Intercom System
- ☐ Landscape Irrigation System
- ☐ Landscaping Lights
- ☐ Light Bulbs
- ☐ Light Fixtures
  (Except Chandeliers)
- ☐ Mailbox

- ☑ Microwave Oven
  - ☐ Built-in ☐ Free Standing
- ☐ Mirror (Attached)
- ☐ Outbuilding
- ☐ Outdoor Furniture
- ☐ Outdoor Playhouse
- ☐ Porch swing
- ☐ Satellite Plate Covers
- ☐ Propane Gas/ Fuel Oil Tank
  - ☐ Above ground ☐ Buried
  - ☐ Leased ☐ Owned
- ☐ Propane/ Fuel Oil in Tank
- ☐ Refrigerator
- ☐ Safe
  - ☐ Built-in ☐ Free Standing
- ☐ Satellite Dish/Receiver
- ☐ Sauna
- ☐ Sewage Pump
- ☐ Shaking Unit & System
- ☐ Shower Head/Sprayer
- ☐ Smoke Detector
  - ☐ Hard Wired ☐ Battery Operated
- ☐ Speakers (Built-in)
- ☐ Sky/Gray
- ☐ Sleeping Stones
- ☐ Storage/Stove
- ☐ Storage Building
  - ☐ Gas ☐ Electric
  - ☐ Built-in ☐ Free Standing

- ☐ Sump Pump
- ☐ Surface Unit Cook Top
  - ☐ Gas ☐ Electric
- ☐ Swimming Pool Equipment
  (List below)
- ☐ Swing Set
- ☐ Telephone/Data Jacks/Wires
- ☐ Television Antenna
- ☐ Television Cable/Jacks
- ☑ Thermostat
- ☐ Trash Compactor
- ☐ Tree House
- ☐ Trellis
- ☐ Vacuum System (Built-in)
- ☐ Vacuum Attachments
- ☐ Vent Hood
- ☐ Washing Machine
- ☐ Water Purification System
- ☐ Water Softener System
  - ☐ Leased ☐ Owned
- ☐ Weather Vane
- ☐ Wall Pump
- ☐ Window Screens
- ☐ Window Treatments
  (Including Hardware)
- ☐ Wine Cooler

Copyright 2011 by Georgia Association of REALTORS®, Inc

Other fixtures/items included in the sale of Property shall be: _____

Other fixtures/items not included in the sale of Property shall be: _____

The common law of fixtures shall apply to fixtures not addressed herein. Those fixtures/items that are not included in the sale of Property shall remain Property of Seller and shall be removed prior to closing or the transfer of possession of Property to Buyer, whichever is later. Seller shall lose the right to remove any such fixtures/items not timely removed. In removing all fixtures/items, Seller shall use reasonable care to prevent damage and, if necessary, shall restore the area where the fixture / item has been removed to its original condition.

**SELLER'S REPRESENTATION REGARDING SELLER'S PROPERTY DISCLOSURE STATEMENT:**

Seller represents that Seller has followed the instructions to Seller in Completing This Disclosure Statement set forth in Paragraph A above and warrants the same in updating this Disclosure Statement as needed from time to time.

Seller: _____    Date: 8/22/11

Seller: _____    Date: _____

**RECEIPT AND ACKNOWLEDGMENT BY BUYER:**

Buyer acknowledges the receipt of this Seller's Property Disclosure Statement.

Buyer: _____    Date: 10/6/2011

Buyer: _____    Date: _____

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                    F50, Seller's Property Disclosure Statement Exhibit, Page 5 of 5, 03/10/11

30, 2011  03:38 PM   Mark A Velasco                  626 359 3258                        P.01

# AMENDMENT TO CHANGE CLOSING/POSSESSION DATE
## AMENDMENT #  ___1___

Georgia
Association
of REALTORS®

Date: _____ 9-30-11 _____

2011 Printing

Whereas, the undersigned parties have entered into a certain Agreement with a Binding Agreement Date of _____ _____ for the purchase and sale of real property located at: _____ 3858 Twin Ridge Lane _____, _____ Ellenwood _____, Georgia ___ 30284 ___; and

Whereas, the undersigned parties desire to amend the aforementioned Agreement, it being to the mutual benefit of all parties to do so;

Now therefore, for and in consideration of the sum of Ten Dollars ($10) and other valuable considerations paid by each to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to modify and amend the aforementioned Agreement as follows:

**Closing Date:**  The closing date specified in the aforementioned Agreement is hereby amended as follows:

This transaction shall be closed on the date _____ 10-28-11 _____, or on such other date as may be agreed to by the parties in writing.

**Extension:**  The right to unilaterally extend the closing date for 7 (seven) days as provided for in the Date of Closing and Transfer of Possession paragraph of the aforementioned Agreement ☐ is hereby terminated OR ☐ shall remain in full force and effect.

**Possession:**  The possession date specified in the aforementioned Agreement is hereby amended as follows:

Buyer agrees to allow Seller to retain possession of the Property through:
(Select one. The box not checked shall not be part of this Amendment)
☐ A. the closing; or
☐ B. _____ hours after the closing; or
☐ C. _____ days after the closing at _____ o'clock ___.m.
In the event that Seller retains possession of the Property beyond the day of closing, Seller does hereby guarantee that at the date of surrender of occupancy by Seller, the Property shall be in the same condition as on day of closing.

It is agreed by the parties hereto that all of the other terms and conditions of the aforementioned Agreement shall remain in full force and effect other than as modified herein.  Upon execution by all parties, this Amendment shall be attached to and form a part of said Agreement.

_Jerome Rogers_

Buyer's Signature            Jerome Rogers                    Seller's Signature

Buyer's Signature                                              Seller's Signature

___ Coldwell Banker Kennon, Parker, Duncan & Key ___
Selling Broker                                                Listing Broker

By: _____              By: _____
Broker or Broker's Affiliated Licensee                        Broker or Broker's Affiliated Licensee

Member of: ___ Columbus Board ___ of REALTORS®    Member of: _____ of REALTORS®

---

**Acceptance Date:** The above Amendment is hereby accepted, _____ o'clock ____.m. on the date of _____ ("Acceptance Date").  This Amendment will become binding upon the parties when notice of the acceptance of this Amendment has been received by offeror.  The offeror shall promptly notify offeree when acceptance has been received.

Copyright© 2011 by Georgia Association of REALTORS®, Inc.                        F104, Amendment to Change Closing/Possession Date, 01/01/11

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612



**JEROME ROGERS**
305 E PLATT ST (562) 423-1396
LONG BEACH, CA 90805-6421

3247

16-66/1220
192

Rejoice                    Date 9-14-2011

Pay to the
order of   KPDK                              $ 2000.00

Two Thousand Dollars and No Cents    Dollars

Bank of America
North Long Beach
5253 Long Beach Blvd
Long Beach CA
562.868.1441

VALUED
Customer Since
1979

PHILI                    Jerome Rogers

For

⑈1220006⑈:3247⑈01928⑈04899⑈

Chase
PO BOX 469030
Glendale, CO 80246-9030



October 20, 2011


Daryl Jackson
3868 Twin Ridge Lane
Ellenwood, GA 30294


**Approval of short sale**
Account: 0019297100
Property Address:   3868 Twin Ridge Lane
                    Ellenwood, GA 30294-0000

Dear Daryl Jackson:

We have reviewed your recent request for a short sale on the account above. We have accepted the offer under the Home Affordable Foreclosure Alternatives (HAFA) Program.

We agree to accept all net proceeds from the settlement, but not less than a minimum of $79,738.38, as full and final satisfaction of your loan. After we receive the settlement amount, we will settle your account and release the lien on the property.

**We must receive payment in certified funds on or before 12/06/2011, or this offer becomes null and void.**

This approval is subject to the following:

    **A.**  **Terms**—The sale and closing comply with all terms and conditions of the Short Sale Agreement (the "Agreement").

    **B.**  **Changes**—Any change to the terms and representations in the Agreement must be approved by us in writing. We are under no obligation to approve such changes.

    **C.**  **Subordinate Liens**—Prior to releasing any funds to holders of subordinate liens/mortgages, the closing agent must obtain a written commitment from the subordinate lien holders that they will release the borrower from all claims and liability relating to the subordinate liens in exchange for receiving the agreed upon payoff amount.

    Before the transaction can close, all subordinate lien holders must provide a written commitment that:

        •  They will release their liens and the borrower from personal liability in exchange for a combined payment equivalent of $6,000 to all subordinate lien holders.
        •  Payment for release of any subordinate liens is dependent upon the agreement of all subordinate lien holders to release their liens and the borrower from personal liability.

    **D.**  **Proceeds from Sale**—Except as previously agreed to in writing by Chase, and/or as set forth herein, the seller will not receive any proceeds from the sale of the property. The parties

acknowledge that the seller will receive an incentive payment of $3,000, provided for in the HAFA program. **Please note that Chase requires a copy of the $3,000 relocation incentive check or wire transfer. This should be faxed to (866) 220-4130.**

Any incentive payments will be paid at closing and will be reflected on the HUD-1 Settlement Statement.

E.  **HUD-1--A Preliminary HUD-1 Settlement Statement** must be provided to us at least 48 hours before the closing date. We must also receive the signed **Final HUD-1 Settlement Statement** within 24 hours after closing. Please use the fax number listed below.

    Fax:                   (866) 220-4130

F.  **Real Estate Commissions**--Real estate commissions that are paid from sale proceeds to the listing and selling brokers involved in the transaction cannot exceed 6% of the contract sales price. Neither the buyer nor the seller may receive a commission.

G.  **Bankruptcy**--If you are currently in bankruptcy or you file bankruptcy prior to closing, you must obtain any required consent or approval from the Bankruptcy Court.

H.  **Tax Consequences**—We report forgiveness of debt to the Internal Revenue Service. Proceeding with this transaction may have implications on your state or federal tax liability; please consult a tax advisor for additional information.

I.  **Consumer Reporting**--Please note that our acceptance of this short sale is reported to various consumer reporting agencies and may have an adverse effect on your credit rating. The impact of a short sale depends on the homeowner's entire credit profile. To learn more about the potential impact of a short sale on your credit, visit the Federal Trade Commission website at www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

J.  **Payment Instructions**—**We must receive payoff funds within 24 hours after closing.** Please use the following wiring instructions or overnight mailing address, and include your account number on your payment.

In order to ensure timely acceptance of payments, please do not submit payments at a bank branch.

    Wire:              JPMorgan Chase Bank, N.A.
                      ABA # 021000021
                      Account # 765912993
                      Account Name: Chase Default Payoff Account Client #156
                      Customer Loan Number: ******7100

    Overnight Mail:     Chase
                      Attention Short Sale Department
                      Mail Code OH4-7133
                      3415 Vision Drive
                      Columbus, OH 43219-6009

K.  **Closing Instructions**—At closing, forward the signed **Affidavit of Arm's Length Transaction** (enclosed) to the following address or fax:

    Overnight/Regular Mail:  Chase Fulfillment Center
                           710 South Ash Street, Suite 200
                           Glendale, CO 80246-1989

    Fax:                   (866) 220-4130

**Please call us at the telephone number below on the day of closing to provide us with the details regarding the delivery of funds. After we receive the certified funds, we will**

release the lien. Any excess funds at closing must be refunded to us.

This acceptance is only for the contract sale price of $90,000.00 between Jerome Rogers (the "Buyer"), and the Seller.

If your current mailing address or phone number has changed, please fill out the attached form, sign it and fax it back to us at the number provided. If you have questions, please call us at the telephone number listed below. We appreciate your prompt attention to our request.

Sincerely,

Terry L. Roberts Jr.
Chase
888-332-7856-x5178 Ext. 214-626-4341
(866) 220-4130 Fax
(800) 582-0542 TDD / Text Telephone
www.chase.com

Enclosures

- Borrower Contact Information Update Form
- Affidavit of Arm's Length Transaction


We are a debt collector.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.**

OP411

BORROWER CONTACT INFORMATION UPDATE FORM

Account:              0019297100

Borrower(s):          Daryl Jackson

Property Address:     3868 Twin Ridge Lane
                      Ellenwood, GA 30294-0000


Name of Borrower(s) Requesting Update        _____  _____


                                             _____


Borrower's New Address                       _____


                                             _____


                                             _____


                                             _____


Borrower's New Home Phone Number             _____

Borrower's New Work/Alternate Phone Number   _____

BY SIGNING BELOW,

The borrower(s) agrees to inform JPMorgan Chase Bank, N.A. of any changes in the borrower's current
mailing address and phone number.

Borrower 1     _____     Date     _____

Signature      _____

Borrower 2     _____     Date     _____

Signature      _____

As a reminder, please return this completed form by fax to (866) 220-4130.

OP411

## AFFIDAVIT OF "ARM'S LENGTH TRANSACTION"

Pursuant to a residential purchase agreement (the "Agreement"), the parties identified below as the "Seller" and the "Buyer," respectively, are involved in a real estate transaction whereby the real property commonly known as 3868 TWIN RIDGE LN, ELLENWOOD, GA, 30294-0000 (the "Property") will be sold by the Seller to the Buyer.

JPMorgan Chase Bank, N.A. (the "Lender") holds a deed of trust or mortgage against the Property. In order to complete the sale of the Property, the Seller and the Buyer have jointly asked the Lender to discount the total amount owed on the Loan secured by the deed of trust or mortgage. The Lender, in consideration of the representations made below by the Seller, the Buyer, and their respective agents, agrees to accept the amount of $79,738.38 to resolve its Loan (pursuant to a separate Agreement between the Lender and the Seller) on the express condition that the Seller, the Buyer, and their respective agents (including, without limitation, real estate agents, escrow agents, and title agents) each truthfully represents, affirms, and states as follows:

1. The purchase and sale transaction reflected in the Agreement is an "Arm's Length Transaction," meaning that the transaction has been negotiated by independent, unrelated parties, each of whom is acting in his or her own self-interest, and that the sale price is based on fair market value of the Property. With respect to those persons signing this Affidavit as an agent for either the Seller, the Buyer, or both, those agents are acting in the best interests of their respective principal(s).

2. No Buyer or agent of the Buyer is a family member or business associate of the Seller or the Lender.

3. No Buyer or agent of the Buyer shares a business interest with the Seller or the Lender.

4. There are no hidden terms or hidden agreements or special understandings between the Seller and the Buyer or among their respective agents that are not reflected in the Agreement or the escrow instructions associated with this transaction.

5. There is no agreement, whether oral, written, or implied, between the Seller and the Buyer and/or their respective agents that would allow the Seller to remain in the Property as tenant or to regain ownership of the Property at any time after the consummation of this sale transaction.

6. Except as previously agreed to in writing by the Lender, and/or as set forth herein, the Seller will not receive any proceeds from the sale of the Property. The parties acknowledge that the Seller will receive an incentive payment of $3,000, provided for in the HAFA program. **Please note that the Lender requires a copy of the $3,000 relocation incentive check or wire transfer. This should be faxed to (866) 220-4130.**

   Any incentive payments will be paid at closing and will be reflected on the HUD-1 Settlement Statement.

7. No agent of either the Seller or the Buyer shall receive any proceeds from this transaction except as is reflected in the final estimated closing statement, which shall be provided to the Lender for approval prior to the close of escrow.

8. The Buyer acknowledges that he/she is not an employee of JPMorgan Chase Bank, N.A., and its affiliates, including those associates on assignment through a provider of temporary employment and any relatives of such employees or associates (collectively, an "Employee").

9. Each signatory to this Affidavit expressly acknowledges that the Lender is relying upon the representations made herein as consideration for discounting the payoff on the Loan, which is secured by a deed of trust or mortgage encumbering the Property.

10. Each signatory to this Affidavit agrees to indemnify the Lender and any investor on the Loan for any and all losses resulting from any negligent or intentional misrepresentation made in this Affidavit including, but not limited to, repayment of the amount of the discounted payoff on the Loan.

11. Each signatory to this Affidavit expressly acknowledges that any misrepresentation made by him or her may subject him or her to civil liability.

12. This Affidavit will survive the consummation of the sale transaction.

I/We declare under penalty of perjury under the laws of the State of Georgia that all statements made in this Affidavit are true and correct.

Additionally, I/we fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly and willfully make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

**Buyer 1**                                              **Buyer 2**

_____          _____

(Print Name)                                       (Print Name)

_____          _____

(Signature)                                         (Signature)

_____          _____

(Date)                                                (Date)

**Buyer 3**                                              **Buyer 4**

_____          _____

(Print Name)                                       (Print Name)

_____          _____

(Signature)                                         (Signature)

_____          _____

(Date)                                                (Date)

**Seller 1**                                             **Seller 2**

_____          _____

(Print Name)                                       (Print Name)

_____          _____

(Signature)                                         (Signature)

_____          _____

(Date)                                                (Date)

**Seller 3**                                             **Seller 4**

_____          _____

(Print Name)                                       (Print Name)

_____          _____

(Signature)                                         (Signature)

_____          _____
(Date)                             (Date)

**Buyer's Agent**                  **Seller's Agent**

_____          _____
(Print Name)                       (Print Name)

_____          _____
(Print Company)                    (Print Company)

_____          _____
(Signature and Date)               (Signature and Date)

As a reminder, the signed Affidavit of Arm's Length Transaction must be sent at closing to the address or fax number provided below.

      Overnight/Regular Mail:    Chase Fulfillment Center
                                   710 South Ash Street, Suite 200
                                   Glendale, CO 80246-1989

      Fax:                      (866) 220-4130

OP411

12. This Affidavit will survive the consummation of the sale transaction.

I/We declare, for penalty of perjury under the laws of the State of Georgia that all statements made in this Affidavit are true and correct.

Additionally, I/we fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly and willfully make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Buyer 1 | Buyer 2 |
|---|---|
| Jerome Rogers | |
| (Print Name) | (Print Name) |
| Jerome Rogers | |
| (Signature) | (Signature) |
| 10-25-2011 | |
| (Date) | (Date) |

| Buyer 3 | Buyer 4 |
|---|---|
| (Print Name) | (Print Name) |
| (Signature) | (Signature) |
| (Date) | (Date) |

| Seller 1 | Seller 2 |
|---|---|
| (Print Name) | (Print Name) |
| (Signature) | (Signature) |
| (Date) | (Date) |

| Seller 3 | Seller 4 |
|---|---|
| (Print Name) | (Print Name) |
| (Signature) | (Signature) |

CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing Answer, Counterclaim and Cross Claim to Petitioner's Interpleader Petition upon the below listed interested party(ies) by depositing the same in the United States mail properly addressed and with sufficient postage thereon to insure delivery to the following:

Columbus Bank & Trust Company
c/o Page, Scrantom, Sprouse,
Tucker & Ford, P.C.
William L. Tucker
P.O. Box 1199
Columbus, GA 31902

Law Office of Michael A. Eddings, P.C.
c/o Michael A. Eddings, as Registered Agent
860 Brookstone Centre Parway, Suite B
Columbus, GA 31904

FirstAmerican Title Insurance Company
c/o C. Scott Logan, as Registered Agent
5607 Glenridge Drive, N.E., Suite A200
Atlanta, GA 30342

First American Title Company
c/o Corporation Service Company, as Registered Agent
40 Technology Parkway South, Suite 300
Norcross, GA 30092

This ___8th___ day of November, 2011.

Ray L. Allison
Of Counsel for Jerome Rogers

## IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST COMPANY, A DIVISION OF SYNOVUS BANK, | : : : | CIVIL ACTION FILE NO. SU-11-CV-3875 |
| Petitioner | : | |
| | : | |
| vs. | : : | |
| | : | |
| LAW OFFICE OF MICHAEL A. EDDINGS, P.C., FIRST AMERICAN TITLE INSURANCE COMPANY, FIRST AMERICAN TITLE COMPANY, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | : : : : : | |
| Respondent | : | |

## ANSWER TO PLAINTIFF'S PETITION FOR INTERPLEADER

**COMES NOW**, Defendant, Lachone Trice, herein an unnamed but intended Respondent in the above-styled civil action (hereinafter referred to as "Trice") and submits this her Answer to Plaintiff's Petition for Interpleader responding *seriatim* to the numbered paragraphs thereof, and respectfully shows unto this Honorable Court as follows:

## ANSWER

### 1.

Trice admits Paragraph 1 of Plaintiff's Petition.

### 2.

Trice admits Paragraph 2 of Plaintiff's Petition.

### 3.

Trice admits Paragraph 3 of Plaintiff's Petition.

4.

Trice admits Paragraph 4 of Plaintiff's Petition. By way of further Answer, Trice is a claimant of funds noted in Plaintiff's Petition; is a resident of Muscogee County, Georgia; and believes that she is the Respondent identified in Paragraph 4 of said Petition as John Doe 2. Trice acknowledges that there may be other claimants of the funds noted in Plaintiff's Petition, and that if she is not John Doe 1, she should be specifically named as one of the claimants for such funds.

5.

Trice admits Paragraph 5 of Plaintiff's Petition.

6.

Trice admits Paragraph 6 of Plaintiff's Petition.

7.

Trice admits Paragraph 7 of Plaintiff's Petition.

8.

Trice admits Paragraph 8 of Plaintiff's Petition.

9.

Trice admits Paragraph 9 of Plaintiff's Petition.

10.

Trice admits Paragraph 10 of Plaintiff's Petition. By way of further Answer, Trice shows that on October 25, 2011, she was the Seller of property located at 509 15th Avenue, Columbus, Muscogee County, Georgia. Said property sold for the sum of Fifty-seven Thousand and no/100 ($57,000.00) Dollars. As the Seller, Ms. Trice received a check (numbered 32844, drawn on funds payable from Columbus Bank & Trust Company) in the amount of Fifty Thousand Seven

Hundred Seventy-four and 51/100 ($50,774.51) Dollars. These funds were to be drawn from the depository account of Michael A. Eddings, P.C., depository account 30050766, for said real estate closing held on October 25, 2011. As of the date of this Answer to Plaintiff's Petition for Interpleader, this check has been returned "Dishonored" and Trice has been unable to collect on the funds due and owing her.

11.

Trice admits Paragraph 11 of Plaintiff's Petition.

12.

Trice admits Paragraph 12 of Plaintiff's Petition.

13.

Trice admits Paragraph 13 of Plaintiff's Petition.

14.

Trice admits Paragraph 14 of Plaintiff's Petition.

15.

Responding to the unnumbered "***WHEREFORE***" paragraph of Plaintiff's Petition, Trice responds *seriatim* to the sublettered paragraphs as follows:

(a)     This subparagraph requires no response.

(b)     Trice has no objection to this subparagraph.

(c)     Trice has no objection to this subparagraph.

(d)     Trice has no objection to this subparagraph.

(e)     This subparagraph requires no response.

16.

Trice demands strict proof of any and all allegations contained in Plaintiff's Petition which are not expressly admitted or denied.

Having fully responded to Plaintiff's Petition for Interpleader, Trice prays unto this Honorable Court as follows:

(a)     That this Answer be accepted and filed in accordance with law;

(b)     That Trice's funds in the amount of Fifty Thousand Seven Hundred Seventy-four and 51/100 ($50,774.51) Dollars paid by Petitioner into the Registry of this Court be disbursed to Trice as the Court may deem appropriate;

(c)     That Trice be permitted to recover attorney fees and costs from the funds paid into the Registry of this Court; and,

(d)     For such other and further relief as this Honorable Court deems just and proper.

***RESPECTFULLY SUBMITTED*** this 15 day of November, 2011.

MEACHAM, EARLEY & FOWLER, P.C.

By: _____
Christopher L. Meacham, Esquire
GA Bar #0500050
Attorneys for Defendant, Lachone Trice

PO Box 9031
Columbus, GA  31908-9031
Phone:  706-576-4064
Fax:     706-596-0621

## VERIFICATION

STATE OF GEORGIA

COUNTY OF MUSCOGEE

Personally appeared before me, the undersigned, LACHONE TRICE, after first being duly sworn, deposes and says that she is the Defendant in the foregoing captioned cause, and that the facts contained herein are true and correct.

_____
LACHONE TRICE

Sworn to and subscribed before me this

14 day of November_____, 2011.

_____
Notary Public

My Commission Expires: 8-16-15

S B PATTERSON
NOTARY PUBLIC
Cobb County - State of Georgia
My Comm. Expires Aug. 16, 2015

ME&J/GA/Litigation/Gen'l Civil/Trice, Lachone
Answer to Plaintiff's Petition for Interpleader

## General Civil Case Filing Information Form (Non-Domestic)

Court
☑ Superior
☐ State

County _Muscogee_

Docket # _SU11CV.3875_

Date Filed _11-15-2011_
MM-DD-YYYY

Plaintiff(s)

| Last | First | Middle I. | Suffix | Prefix | Maiden |
|------|-------|-----------|--------|--------|--------|
| _Columbus Bank &_ | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Maiden |
| _Trust Co._ | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Maiden |

No. of Plaintiffs _1_

Defendant(s)

| _Law Office of Michael_ | | | | | |
|------|-------|-----------|--------|--------|--------|
| Last | First | Middle I. | Suffix | Prefix | Maiden |
| _A. Eddings, PC, et al._ | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Maiden |
| Last | First | Middle I. | Suffix | Prefix | Maiden |

No. of Defendants _Unnumbered._

Plaintiff/Petitioner's Attorney          ☐ Pro Se

_Tucker William L_

| Last | First | Middle I. | Suffix |
|------|-------|-----------|--------|

Bar # _718050_

---

### Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☑ Other General Civil Specify _____
   _Interpleader_

---

### If Tort is Case Type:
#### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☑ Other Professional Negligence

☐ Product Liability

☐ Other Specify _____

Are Punitive Damages Pleaded? ☑ Yes ☐ No

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

FILED IN OFFICE

2011 NOV 14  AM 10: 58

LINDA PIERCE
MUSCOGEE COUNTY
SUPERIOR COURT

COLUMBUS BANK AND TRUST COMPANY,     *
A DIVISION OF SYNOVUS BANK,           *      Civil Action File No.:
                                      *      SU-11-CV-3876
          Petitioner,                 *
                                      *
Vs.                                   *
                                      *
LAW OFFICE OF MICHAEL A. EDDINGS, P.C., *
FIRST AMERICAN TITLE INSURANCE        *
COMPANY, FIRST AMERICAN TITLE         *
COMPANY, JOHN DOE 1, JOHN DOE 2,      *
JOHN DOE 3, ET AL.                    *
                                      *
          Respondents.                *

## NOTICE OF HEARING

Please be advised that the MOTION FOR PAYMENT OF FUNDS FROM THE REGISTRY OF THE COURT filed in the above referenced matter has been scheduled and will now come on before this Court for hearing, before the Honorable Bemon G. McBride, III, Judge, on **Monday, November 28, 2011, at 10:00 a.m.**, on the 11th floor of the Columbus Consolidated Government Center, Columbus, Muscogee County, Georgia.

This ___10th___ day of November, 2011.


DENNEY, PEASE, ALLISON & KIRK


By: _____
          Ray L. Allison
          Ga. Bar No.: 013000


Post Office Box 2648
Columbus, Georgia 31902-2648
(706) 324-3711

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the NOTICE OF HEARING by depositing the same in the United States mail properly addressed and with sufficient postage thereon to insure delivery to the following:

Columbus Bank & Trust Company
c/o Page, Scrantom, Sprouse,
Tucker & Ford, P.C.
William L. Tucker
P.O. Box 1199
Columbus, GA 31902

Law Office of Michael A. Eddings, P.C.
c/o Michael A. Eddings, as Registered Agent
860 Brookstone Centre Parway, Suite B
Columbus, GA 31904

FirstAmerican Title Insurance Company
c/o C. Scott Logan, as Registered Agent
5607 Glenridge Drive, N.E., Suite A200
Atlanta, GA 30342

First American Title Company
c/o Corporation Service Company, as Registered Agent
40 Technology Parkway South, Suite 300
Norcross, GA 30092

Meacham, Earley & Fowler, P.C.
Attn: Christopher L. Meacham
P.O. Box 9031
Columbus, GA 31908

This _10_ day of November, 2011.

Ray L. Allison
Of Counsel for Jerome Rogers

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

COLUMBUS BANK AND TRUST     *
COMPANY, A DIVISION OF SYNOVUS   *
BANK,       *
      *    CIVIL ACTION FILE
     Petitioner,      *    NO. SU11 CV-3875
      *
v.       *
      *
LAW OFFICE OF MICHAEL A. EDDINGS,   *
P.C., FIRSTAMERICAN TITLE INSURANCE   *
COMPANY, FIRST AMERICAN TITLE    *
COMPANY, JEROME ROGERS, LACHONE   *
TRICE, IKE A. NWAOBI, UNITED STATES   *
OF AMERICA, FOR US CORPS OF     *
ENGINEERS, FEDERAL NATIONAL     *
MORTGAGE ASSOCIATION, TRC     *
GLOBAL SOLUTIONS, INC.; ELIZABETH   *
WALLER, ET. AL.,      *
      *
     Respondents.     *

FIRST AMENDMENT TO PETITION FOR INTERPLEADER

In filing this First Amendment, Petitioner shows as follows:

1.

Respondent John Doe 1 has now been identified as Jerome Rogers.  Mr. Rogers

has filed responsive pleadings and in so doing has made a claim for $89,498.90.

Respondent requested that the latter be paid to him from the monies interplead by

Petitioner.

2.

Respondent John Doe 2 has now been identified as Lachone Trice.  Ms. Trice has

filed responsive pleadings and in so doing has made a claim for $50,774.51.  Respondent

requested that the latter be paid to her from the funds interpled by Petitioner.

3.

Respondent John Doe 3 has now been identified as Ike A. Nwaobi. Mr. Nwaobi has filed responsive pleadings and in so doing has made a claim for $9,800.00. Respondent requested that the latter be paid to him from the funds interpled by Petitioner.

4.

Respondent John Doe 4 has now been identified as the United States of America and through it, The Corps of Engineers. United States has not filed responsive pleadings, but has notified Petitioner that it intends to do so and that it will make a claim of $87,421.04.

5.

Respondent John Doe 5 has now been identified as Federal National Mortgage Association ("Fannie Mae"). Fannie Mae has not filed responsive pleadings but has advised Petitioner that it will make a claim of $174,825.20. According to information received, said claim pertains to a closing involving Crescent Mortgage and a wire transfer into the account in question of $194,137.49.

6.

Respondents John Doe 6 and 7 have now been identified as TRC Global Solutions, Inc. ("TRC") and, on information and belief, Elizabeth Waller. TRC and Elizabeth Waller have not filed responsive pleadings but TRC has advised Petitioner that a claim of $145,621.82 will be made for Respondents.

Wherefore, Petitioner prays that this Amendment be permitted and:

(a) That the usual proceedings be had as in all cases of a Bill of Interpleader;

(b)     That the Court issue an order directing the disposition of the funds

describagd herein;

(c)     That an Order be issued discharging Petitioner from further

obligation with respect to said monies and account;

(d)     That Petitioner be permitted to recover its costs from the funds paid into

the registry of the Court, and

(e)     For such other and further relief as may be just and proper, premises

considered.

This 21st day of November, 2011.

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By: _William L. Tucker_

William L. Tucker
State Bar No.: 718050

1111 Bay Avenue
Third Floor, Synovus Centre
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251

Attorneys for Columbus Bank and
Trust Company, a Division of Synovus
Bank

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | |
|---|---|
| COLUMBUS BANK AND TRUST COMPANY, A DIVISION OF SYNOVUS BANK,<br><br>Petitioner,<br><br>v.<br><br>LAW OFFICE OF MICHAEL A. EDDINGS, P.C., FIRSTAMERICAN TITLE INSURANCE COMPANY, FIRST AMERICAN TITLE COMPANY, JEROME ROGERS, LACHONE TRICE, IKE A. NWAOBI, UNITED STATES OF AMERICA, FOR US CORPS OF ENGINEERS, FEDERAL NATIONAL MORTGAGE ASSOCIATION, TRC GLOBAL SOLUTIONS, INC.; ELIZABETH WALLER, ET. AL.,<br><br>Respondents. | *<br>*<br>*<br>*<br>*   CIVIL ACTION FILE<br>*   NO. SU11 CV-3875<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## CERTIFICATE OF SERVICE

I do hereby certify that I am counsel for Petitioner in the above-styled action and that I have this day served a copy of the above and foregoing Amendment to Petition for Interpleader by emailing and mailing a copy of same, postage prepaid to the following:

Law Office of Michael A. Eddings, P.C.
c/o Michael A. Eddings, As Registered Agent
860 Brookstone Center Parkway
Suite B
Columbus, Georgia 31904

Jeffrey Schneider, Esq.
Weissman, Nowack, Curry
& Wilco, P.C.
One Alliance Center
4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Attorney for First American Title Insurance Company

William S. McFadden, Esq.
McFadden, Lyon & Rouse, LLC
718 Downtowner Blvd.
Mobile, Alabama 36609
Attorney for Federal National Mortgage Association

Ray L. Allison, Esq.
Denney, Pease & Allison
P. O. Box 2648
Columbus, Georgia 31902
Attorney for Jerome Rogers

Christopher Meacham, Esq.
Meacham, Early, Fowler, P.C.
P. O. Box 9031
Columbus, Georgia 31908
Attorney for Lachone Trice

Christopher Meacham, Esq.
Meacham, Early, Fowler, P.C.
P. O. Box 9031
Columbus, Georgia 31908
Attorney for Ike A. Nwaobi

Benjamin A. Land
Buchanan & Land, LLP
P.O. Box 2848
1425 Wynnton Road
Columbus, Georgia 31902
Attorney for TRC Global Solutions, Inc.

Michael Moore, Esq.
United States Attorney
Attention: Ms. Veronica Jones
Civil Process Clerk
P.O. Box 1702
Macon, Georgia 31202
Attorney for United States of America

This 21ᵗʰ day of November, 2011.

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By: _____

William L. Tucker
State Bar No.: 718050

1111 Bay Avenue
Third Floor, Synovus Centre
Post Office Box 1199
Columbus, Georgia  31902-1199
(706) 324-0251

Attorneys for Columbus Bank and
Trust Company, a Division of Synovus
Bank

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST | § | CIVIL ACTION FILE NO. |
| COMPANY, A DIVISION OF SYNOVUS | § | SU-11-CV-3875 |
| BANK, | § | |
| *Petitioner* | § | |
| | § | |
| vs. | § | |
| | § | |
| LAW OFFICE OF MICHAEL A. | § | |
| EDDINGS, P.C., FIRST AMERICAN | § | |
| TITLE INSURANCE COMPANY, FIRST | § | |
| AMERICAN TITLE COMPANY, JOHN | § | |
| DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | § | |
| *Respondent* | § | |

## ANSWER TO PLAINTIFF'S PETITION FOR INTERPLEADER

***COMES NOW,*** Defendant, FBMC Mortgage Corporation d/b/a First Banker's Mortgage Corporation, herein an unnamed but intended Respondent in the above-styled civil action (hereinafter referred to as "FBMC") and submits this his Answer to Plaintiff's Petition for Interpleader responding *seriatim* to the numbered paragraphs thereof, and respectfully shows unto this Honorable Court as follows:

1.

FBMC admits Paragraph 1 of Plaintiff's Petition.

2.

FBMC admits Paragraph 2 of Plaintiff's Petition.

3.

FBMC admits Paragraph 3 of Plaintiff's Petition.

4.

FBMC admits Paragraph 4 of Plaintiff Petition. By way of further Answer, FBMC is a claimant of funds noted in Plaintiff's Petition, is a Georgia Corporation doing business in Muscogee County, Georgia, and believes that it is the Respondent identified in Paragraph 4 of said Petition as John Doe 1. FBMC acknowledges that there may be other claimants of the funds noted in Plaintiff's Petition, and that if it is not John Doe 1, it should be specifically named as one of the claimants for such funds.

5.

FBMC admits Paragraph 5 of Plaintiff's Petition.

6.

FBMC admits Paragraph 6 of Plaintiff's Petition.

7.

FBMC admits Paragraph 7 of Plaintiff's Petition.

8.

FBMC admits Paragraph 8 of Plaintiff's Petition.

9.

FBMC admits Paragraph 9 of Plaintiff's Petition.

10.

FBMC admits Paragraph 10 of Plaintiff's Petition. By way of further Answer, FBMC shows that on or about October 27, 2011, FBMC, (a Mortgage Broker) brokered a property sale and a loan transaction which was closed by the Law Office of Michael A. Eddings, P.C. The purchase and sale was completed and the lender which FBMC procured, wired $194,137.49 to Attorney Michael A. Eddings by and through Petitioner. Although the sale/loan transaction was completed by Attorney Michael A. Eddings and Mr. Eddings' office had agreed to deliver to FBMC the sum of $7,161.61 along with certain loan closing documents, that FBMC is required by the State of Georgia Banking Commission to keep in file. FBMC never received said funds or the required documents (see attached HUD-1 Settlement Statement as proof of closing).

11.

FBMC admits Paragraph 11 of Plaintiff's Petition.

12.

FBMC admits Paragraph 12 of Plaintiff's Petition.

13.

FBMC admits Paragraph 13 of Plaintiff's Petition.

14.

FBMC admits Paragraph 14 of Plaintiff's Petition.

15.

Responding to the unnumbered *"WHEREFORE"* paragraph of Plaintiff's Petition, FBMC responds *seriatim* to the sublettered paragraphs as follows:

(a) This subparagraph requires no response.

(b) FBMC has no objection to this subparagraph.

(c) FBMC has no objection to this subparagraph.

(d) FBMC has no objection to this subparagraph.

(e) This subparagraph requires no response.

16.

FBMC demands strict proof of any and all allegations contained in Plaintiff's Petition which are not expressly admitted or denied.

Having fully responded to Plaintiff's Petition for Interpleader, FBMC prays unto this Honorable Court as follows:

(a)     That this Answer be accepted and filed in accordance with law;

(b)     The FBMC's funds in the amount of Seven Thousand One Hundred Sixty-One and 61/100's ($7,161.61) Dollars paid by Petitioner into the Registry of this Court be disbursed to FBMC as the Court may deem appropriate;

(c)     That FBMC be permitted to recover attorney fees and costs from the funds paid into the Registry of this Court;

(d)     That a hearing on said matter be set down for determination as soon as possible; and

(e)     For such other and further relief as this Honorable Court deems just and proper.

***RESPECTFULLY SUBMITTED*** this __18__ day of November, 2011.

O. WAYNE SPENCE, P.C.

By: _____
O. Wayne Spence
GA Bar #671450
Attorney for Defendant, FBMC

2945 Gardenia Street
Columbus, GA 31906
Phone: 706-324-7600
Fax:    706-324-0856

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST | § | CIVIL ACTION FILE NO. |
| COMPANY, A DIVISION OF SYNOVUS | § | SU-11-CV-3875 |
| BANK, | § | |
| *Petitioner* | § | |
| | § | |
| vs. | § | |
| | § | |
| LAW OFFICE OF MICHAEL A. | § | |
| EDDINGS, P.C., FIRST AMERICAN | § | |
| TITLE INSURANCE COMPANY, FIRST | § | |
| AMERICAN TITLE COMPANY, JOHN | § | |
| DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | § | |
| *Respondent* | § | |

CERTIFICATE OF SERVICE

This is to certify the undersigned has served Plaintiff with a copy of Answer to Plaintiff's Petition for Interpleader by mailing via first class mail, postage prepaid, a copy of the same to Plaintiff's attorney of record:

William L. Tucker
Page, Scrantom, Sprouse, Tucker and Ford
PO Box 1199
Columbus, GA 31902

This /5ᵗʰ day of November, 2011.

O. WAYNE SPENCE, P.C.

By: _____
O. Wayne Spence
GA Bar #671450
Attorney for Defendant, FBMC

2945 Gardenia Street
Columbus, GA 31906
Phone: 706-324-7600
Fax:   706-324-0856

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST | § | CIVIL ACTION FILE NO. |
| COMPANY, A DIVISION OF SYNOVUS | § | SU-11-CV-3875 |
| BANK, | § | |
| *Petitioner* | § | |
| | § | |
| vs. | § | |
| | § | |
| LAW OFFICE OF MICHAEL A. | § | |
| EDDINGS, P.C., FIRST AMERICAN | § | |
| TITLE INSURANCE COMPANY, FIRST | § | |
| AMERICAN TITLE COMPANY, JOHN | § | |
| DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | § | |
| *Respondent* | § | |

## ANSWER TO PLAINTIFF'S PETITION FOR INTERPLEADER

**COMES NOW,** Defendant, William Rembert, herein an unnamed but intended Respondent in the above-styled civil action (hereinafter referred to as "Rembert") and submits this his Answer to Plaintiff's Petition for Interpleader responding *seriatim* to the numbered paragraphs thereof, and respectfully shows unto this Honorable Court as follows:

1.

Rembert admits Paragraph 1 of Plaintiff's Petition.

2.

Rembert admits Paragraph 2 of Plaintiff's Petition.

3.

Rembert admits Paragraph 3 of Plaintiff's Petition.

4.

Rembert admits Paragraph 4 of Plaintiff Petition. By way of further Answer, Rembert is a claimant of funds noted in Plaintiff's Petition, and believes that he is the Respondent identified in Paragraph 4 of said Petition as John Doe 1. Rembert acknowledges that there may be other claimants of the funds noted in Plaintiff's Petition, and that if he is not John Doe 1, he should be specifically named as one of the claimants for such funds.

5.

Rembert admits Paragraph 5 of Plaintiff's Petition.

6.

Rembert admits Paragraph 6 of Plaintiff's Petition.

7.

Rembert admits Paragraph 7 of Plaintiff's Petition.

8.

Rembert admits Paragraph 8 of Plaintiff's Petition.

9.

Rembert admits Paragraph 9 of Plaintiff's Petition.

10.

Rembert admits Paragraph 10 of Plaintiff's Petition. By way of further Answer, Rembert shows that in anticipation of closing a real estate transaction of which Defendant, Michael A. Eddings was to be the closing attorney, Rembert at the direction of Defendant, Michael A. Eddings caused certain funds in the amount of $3,100.00 to be wire transferred or deposited in the Trust Account of Plaintiff on or about October 26, 2011 ("Funds"). The real estate transaction did not occur, due in part to Plaintiff's filing the within action, so that the Funds belonging to Rembert were part of the funds paid into the Registry of this Honorable Court by Plaintiff. Rembert stands ready to provide all such documentation necessary or desirable to prove to this Honorable Court and others that Rembert is entitled to the Funds at such time as Plaintiff or this Honorable Court requests.

11.

Rembert admits Paragraph 11 of Plaintiff's Petition.

12.

Rembert admits Paragraph 12 of Plaintiff's Petition.

13.

Rembert admits Paragraph 13 of Plaintiff's Petition.

14.

Rembert admits Paragraph 14 of Plaintiff's Petition.

15.

Responding to the unnumbered *"WHEREFORE"* paragraph of Plaintiff's Petition, Rembert responds *seriatim* to the sublettered paragraphs as follows:

(a) This subparagraph requires no response.

(b) Rembert has no objection to this subparagraph.

(c) Rembert has no objection to this subparagraph.

(d) Rembert has no objection to this subparagraph.

(e) This subparagraph requires no response.

16.

Rembert demands strict proof of any and all allegations contained in Plaintiff's Petition which are not expressly admitted or denied.

Having fully responded to Plaintiff's Petition for Interpleader, Rembert prays unto this Honorable Court as follows:

(a)     That this Answer be accepted and filed in accordance with law;

(b)     The Rembert's funds in the amount of Thirty One Hundred and 00/100's ($3,100.00) Dollars paid by Petitioner into the Registry of this Court be disbursed to Rembert as the Court may deem appropriate;

(c)     That Rembert be permitted to recover attorney fees and costs from the funds paid into the Registry of this Court;

(d)     That a hearing on said matter be set down for determination as soon as possible; and

(e)     For such other and further relief as this Honorable Court deems just and proper.

***RESPECTFULLY SUBMITTED*** this __/8__ day of November, 2011.

O. WAYNE SPENCE, P.C.

By: _____
O. Wayne Spence
GA Bar #671450
Attorney for Defendant, Rembert

2945 Gardenia Street
Columbus, GA 31906
Phone: 706-324-7600
Fax:    706-324-0856

# BUCHANAN & LAND, LLP

### ATTORNEYS AT LAW
#### 1425 WYNNTON ROAD
#### P. O. BOX 2848
#### COLUMBUS, GEORGIA 31902

JERRY A. BUCHANAN *
BENJAMIN A. LAND *
JAMES D. LAMB
TRISHA D. HARGROVE *
WILLIAM A. BUCHANAN
LORI M. LEONARDO
*ADMITTED IN GA & AL

TELEPHONE: (706) 323-2848
FACSIMILE:  (706) 323-4242
WWW.BUCHANANLAND.COM

Writer's E-Mail Address:
benland@buchananland.com

November 21, 2011

By Hand Delivery
Honorable Judge Bemon G. McBride, III
100 10th Street
Government Center
Tower, 4th Floor
Columbus, GA 31901

Re:   Columbus Bank and Trust Company, A Division of Synovus Bank
v. Law Office of Michael A. Eddings, P.C., et al.
Superior Court of Muscogee County, Georgia
Civil Action File No. SU-11-CV-3875

Dear Judge McBride:

This should confirm that I represent TRC Global Solutions, Inc. in the above referenced matter. I have enclosed copies of the following documents I have filed today.

1.   TRC Global Solutions, Inc.'s Answer to Petition for Interpleader;
2.   TRC Global Solutions, Inc.'s Motion for Payment of Funds from Registry of Court; and
3.   Notice of Hearing.

I look forward to addressing this matter with you on Monday, November 28, 2011.

Sincerely,

Benjamin A. Land
For the Firm

BAL/pj
Encs.
cc:    Michael A. Eddings
       Jeffrey Schneider, Esq.
       William S. McFadden, Esq.
       Ray L. Allison, Esq.
       Christopher Meacham, Esq.
       Michael Moore, Esq.

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

COLUMBUS BANK AND TRUST       *
COMPANY, A DIVISION OF SYNOVUS   *
BANK                          *
                              *
        Petitioner,           *
                              *
v.                            *       Civil Action File No. SU-11-CV-3875
                              *
LAW OFFICE OF MICHAEL A.      *
EDDINGS, P.C., FIRST AMERICAN  *
TITLE INSURANCE COMPANY, FIRST *
AMERICAN TITLE COMPANY, JOHN  *
DOE 1, JOHN DOE 2, JOHN DOE 3, et al., *
                              *
        Respondents.          *

TRC GLOBAL SOLUTIONS, INC.'S ANSWER TO PETITION FOR
INTERPLEADER

COMES NOW TRC Global Solutions, Inc. ("TRC"), identified as "John Doe" in the above-styled action, and files this its Answer to Petitioner's Petition for Interpleader, and respectfully shows the Court the following:

1.

TRC admits the allegations contained in Paragraph 1 of Petitioner's Petition for Interpleader.

2-3.

TRC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 2 and 3 of Petitioner's Petition for Interpleader.

4.

Responding to Paragraph 4 of Petitioner's Petition for Interpleader, TRC admits

that it is a claimant of the funds in question.  TRC further shows the Court that the amount of its claim is $145,621.82.

5-7.

TRC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 5, 6, and 7 of Petitioner's Petition for Interpleader.

8.

TRC admits the allegations contained in Paragraph 8 of Petitioner's Petition for Interpleader and further shows the Court the following:

At the time Petitioner paid the balance of the trust account at issue into the registry of the Court, the trust account contained a total of $145,621.82 that was paid into the trust account for the benefit of TRC.  Those funds rightfully belong to TRC and/or should be paid to others on TRC's behalf.  Those funds were paid into the trust account as a result of a real estate closing that occurred on October 25, 2011.  That closing was designed to consummate the sale of real estate located at 2238 Birchwood Drive, Columbus, Georgia, 31909. TRC was the seller of this property, and Amanda Elizabeth Waller was the buyer.  As part of that closing, TRC fulfilled its obligation to sign the deed to the property over to the buyer.  In return, sufficient funds were deposited into the trust account to cover the following obligations of TRC which were to be paid with said funds as the consideration for TRC's transfer of the property:

> $135,930.49 to be paid to Chase Home Finance, LLC ("Chase") to satisfy TRC's debt to Chase (which debt is secured by a security deed against the property in question)[1]

---

[1] As a result of this debt and the property taxes described below not being paid as intended, Chase has paid the property taxes and TRC has paid the November mortgage

$6,770.00 to be paid to Coldwell Banker Kennon Parker Duncan & Key to satisfy a real estate commission for the sale of the property in question

$30.00 to be paid to The Law Office of Michael A. Eddings, P.C. for a wire fee in connection with the transaction for the sale of the property in question

$12.00 to be paid to the Clerk of Superior Court for certain government recording and transfer charges in connection with this transaction[2]

$983.00 to be paid to Associated Title & Closing Company, LLC for a closing fee and related overnight fee in connection with this transaction

$1,097.33 to be paid to the Muscogee County Tax Commissioner for property taxes on the property in question[3]

$399.00 to be paid to Home Buyers Resale Warranty Corp. for a home warranty on the home situated on the property in question

$400.00 to be paid to Gary G. Lawson, P.C. for a closing fee in connection with this transaction

A true and correct copy of the Settlement Statement (HUD-1) for the closing of this transaction is attached hereto as Exhibit 1. The funds that should have been paid out of the trust account to Chase Home Finance, LLC ($135,930.40), Coldwell Banker Kennon Parker Duncan & Key ($6,770.00), Associated Title & Closing Company, LLC ($983.00), and Gary G. Lawson, P.C. ($400.00) were not paid as they should have been

---

payment to Chase. As a result, the amount owed to Chase, as of November 28, 2011, is $135,767.51. That amount will increase by $22.21 per day for every day the debt is not paid. The $135,767.51 figure is the amount that should be paid to Chase out of the funds currently in the registry of the Court, as of November 28, 2011. For every day that passes after November 28, 2011, $22.21 should be added to the amount that should be paid out of the registry of the Court to Chase—subject to the cap of $135,930.49, which is the amount actually paid into the trust account for the satisfaction of the Chase debt.

[2] This $12.00 charge has been included in Chase's payoff figure referenced in footnote 1. Thus, in order to avoid a double payment, TRC is not requesting that a separate payment of $12.00 be made to the Clerk of Superior Court.

[3] As referenced in footnote 1, these property taxes have since been paid by Chase. As a result, there are no property taxes currently owed, and the amount of the debt to Chase has increased due to the tax payment.

and remained in the trust account at the time Petitioner paid said funds into the registry of the Court. Thus, those funds are presently part of the funds that are in the registry of this Court. On information and belief, it appears that the funds that should have been paid out of the trust account to cover the other obligations described above were likewise not paid and also remained in the trust account at the time Petitioner paid said funds into the registry of the Court.

The funds described above are now in the registry of the Court and, absent an Order of the Court, cannot be paid to the entities that are entitled to be paid on TRC's behalf. The Court should enter an Order directing the payment of these funds to the entities described above (without deduction for attorney's fees or other costs and with the balance of any funds remaining after the payment of these entities to be paid to TRC), thereby allowing this real estate transaction to be finally consummated as intended by the parties thereto. Absent such an Order, TRC will be irreparably harmed.

9-10.

TRC is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 9 and 10 of Petitioner's Petition for Interpleader. Responding further, TRC shows that there is no uncertainty as to TRC's rights in this matter.

11.

On information and belief, TRC admits Paragraph 11 of Petitioner's Petition for Interpleader.

12.

TRC is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 12 of Petitioner's Petition for Interpleader. However, TRC responds that there is no uncertainty as to its rights in this matter. For the reasons shown above, it is entitled to have $145,621.82 paid out of the funds at issue at this time for its benefit.  Said payments should be payable to the entities described above in Paragraph 8 of this Answer.

13-14.

TRC shows that Paragraphs 13 and 14 of Petitioner's Petition for Interpleader constitute legal conclusions requiring no answer, and therefore, TRC neither admits nor denies the allegations contained in Paragraphs 13 and 14.

15.

TRC denies each and every other allegation contained in Petitioner's Petition for Interpleader not specifically admitted or otherwise answered hereinabove.

WHEREFORE, having fully responded to Petitioner's Petition for Interpleader, TRC requests the following relief:

A.      That it be given the judgment of this Court;

B.      That an Order be entered directing the payment of $145,621.82 from the funds currently in the registry of the Court as follows:

$135,767.51 to be paid to Chase and an additional $22.21 per day to be paid to Chase for every day after November 28, 2011, provided that the amount to be paid to Chase out of these funds shall not exceed $135,930.49 (the amount paid into the trust account for the satisfaction of the Chase debt);

$6,770.00 to be paid to Coldwell Banker Kennon Parker Duncan & Key;

$983.00 to be paid to Associated Title & Closing Company, LLC;

$400.00 to be paid to Gary G. Lawson, P.C. for a closing fee in connection with this transaction;

The payment of all other sums that should have been paid to the entities described in Answer but which were not paid;

The payment to TRC of $145,621.82 less the aggregate amount of the payments described above; and

C.      That it be granted any and all other relief allowed by law.

This ___2/s+___ day of November, 2011.

BUCHANAN & LAND, LLP

BY:_____
Benjamin A. Land
Georgia Bar No. 432825
William A. Buchanan
Georgia Bar No. 144226
Attorneys for TRC Global Solutions, Inc.

Post Office Box 2848
Columbus, Georgia 31902
(706) 323-2848

OMB Approval No. 2502-0265



# A. Settlement Statement (HUD-1)

| B. Type of Loan | | |
|---|---|---|
| 1. ☒ FHA   2. ☐ RHS   3. ☐ Conv. Unins.   4. ☐ VA   5. ☐ Conv. Ins. | 6. File Number 11-0750 | 7. Loan Number 201100920 |
| | 8. Mortgage Insurance Case Number 105-6697234-703 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown here. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Amanda Elizabeth Walter 3705 Williams Road, Apt. 30 Columbus, GA 31904 | TRC Global Solutions, Inc., a Wisconsin Corporation 1042 East Juneau Ave Milwaukee, WI 53202 | Primary Residential Mortgage, Inc. 4750 West Wiley Post Way, Suite 200 Salt Lake City, UT 84116 |

| G. Property Location | H. Settlement Agent | 706-653-7227 |
|---|---|---|
| 2238 Birchwood Drive Columbus, GA 31909 | The Law Office of Michael A. Eddings, P.C. | |
| | Place of Settlement 860 Brookstone Centre Pkwy Suite B Columbus, GA 31904 | I. Settlement Date 10/25/11 DD: 10/25/11 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 129,500.00 | 401. Contract sales price | 129,500.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 7,174.85 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes                    to | | 406. City/town taxes                   to | |
| 107. County taxes          10/25  to 12/31 | 335.71 | 407. County taxes          10/25  to 12/31 | 335.71 |
| 108. Assessment                    to | | 408. Assessment                   to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 137,010.56 | **420. GROSS AMOUNT DUE TO SELLER** | 129,835.71 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 126,216.00 | 502. Settlement charges to seller (line 1400) | 9,691.33 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan # 1881377994 | 135,930.49 |
| | | Chase Home Finance LLC | |
| 205. Lender credit | 609.00 | 505. Payoff of second mortgage loan | |
| 206. Lender credit to cure transfer tax. | 4.50 | 506. Commission Deposit held by broker | 1,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Borrower Costs Paid by Seller | 4,747.00 | 509. Borrower Costs Paid by Seller | 4,747.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes                    to | | 510. City/town taxes                   to | |
| 211. County taxes                    to | | 511. County taxes                   to | |
| 212. Assessment                    to | | 512. Assessment                   to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 132,576.50 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 151,368.82 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 137,010.56 | 601. Gross amount due to seller (line 420) | 129,835.71 |
| 302. Less amounts paid by/for borrower (line 220) | 132,576.50 | 602. Less reduction amount due to seller (line 520) | 151,368.82 |
| **303. CASH     FROM     BORROWER** | 4,434.06 | **603. CASH     FROM     SELLER** | 21,533.11 |



EXHIBIT 1

| | File Number: 11-0750 | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **L. SETTLEMENT CHARGES:** | | | | |
| **700. Total Real Estate Broker Fees** | 7,770.00 | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $    3,885.00  to   Coldwell Banker Kennon Parker Duncan & Key | (Less 1,000.00 Deposit=2,885.00) | | | |
| 702. $    3,885.00  to   Coldwell Banker Kennon Parker Duncan & Key | | | | 6,770.00 |
| 703. Commission paid at Settlement | | | | |
| 704. Realtor Holds Deposit | Coldwell Banker Kennon Parker Duncan & Key | 1,000.00 | | |
| 705. | | P.O.C. | | |
| **800. Items Payable In Connection with Loan** | | | | |
| 801. Our origination charge       (includes Origination Point(s) $2,244.67)  $    2,244.67  (from GFE#1) | | | | |
| 802. Your credit or charge (points) for the specific interest rate chosen      $           (from GFE#2) | | | | |
| 803. Your adjusted origination charges | (from GFE A) | | 2,244.67 | |
| 804. Appraisal Fee | (from GFE#3) | | 450.00 | |
| 805. Credit Report | (from GFE#3) | | 17.50 | |
| 806. Tax service | (from GFE#3) | | | |
| 807. Flood certification      FAFDS | (from GFE#3) | | 9.00 | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| 814. | | | | |
| **900. Items Required by Lender to Be Paid in Advance** | | | | |
| 901. Daily interest charges    from 10/25/11  to 11/01/11  @$   12.9674  /day    (from GFE#10)    7 day(s) | | | 90.77 | |
| 902. Mortgage Insurance Premium   for           to Dept of HUD | (from GFE#3) | | 1,249.67 | |
| 903. Homeowner's insurance     for     1 yr to ASI    $    579.00  (from GFE#11) | | | 579.00 | |
| 904. | | | | |
| 905. | | | | |
| **1000. Reserves Deposited with Lender** | | | | |
| 1001. Initial deposit for your escrow account | (from GFE#9) | | 646.24 | |
| 1002. Hazard Insurance       3 mo. @$    48.25 per mo. $    144.75 | | | | |
| 1003. Mortgage Insurance      0 mo. @$    118.76 per mo. $ | | | | |
| 1004. City property taxes        mo. @$        per mo. $ | | | | |
| 1005. County property taxes     3 mo. @$    133.83 per mo. $    401.49 | | | | |
| 1006. Annual Assessments        mo. @$        per mo. $ | | | | |
| 1007.                 mo. @$        per mo. $ | | | | |
| 1008.                 mo. @$        per mo. $ | | | | |
| 1009. Aggregate Adjustment            $ | | | | |
| **1100. Title Charges** | | | | |
| 1101. Title services and lender's title insurance | (from GFE#4) | | 885.00 | |
| 1102. Settlement or closing fee    The Law Office of Michael A. Eddings, $    600.00  (from GFE#4) | | | | |
| 1103. Owner's title insurance    First American Title Insurance compan    (from GFE#5) | | | 505.00 | |
| 1104. Lender's title insurance    First American Title Insurance compan$    100.00 | | | | |
| 1105. Lender's coverage      128,215.00 --- 100.00 | | | | |
| 1106. Owner's coverage       129,500.00 --- 505.00 | | | | |
| 1107. Agent's portion of the total title insurance premium    The Law Office of Michael A. Eddings, P.C.  $    453.75 | | | | |
| 1108. Underwriter's portion of the total title insurance premium   First American Title Insurance company  $    151.25 | | | | |
| 1109. Title exam fee    Posey, Moye & Cardedge, LLP    $    185.00  (from GFE#4) | | | | |
| 1110. | | | | |
| 1111. | | | | |
| 1112. Wire Fee    The Law Office of Michael A. Eddings, P.C. | | | | 30.00 |
| 1113. | | | | |
| **1200. Government Recording and Transfer Charges** | | | | |
| 1201. Government recording charges | (from GFE#7) | | 54.00 | |
| 1202. Deed $    12.00      Mortgage $    32.00      Releases $    12.00 | | | | 12.00 |
| 1203. Transfer taxes | (from GFE#8) | | 569.00 | |
| 1204. City/county tax/stamps    Deed $        Mortgage $ | | | | |
| 1205. State tax/stamps     Deed $    129.50    Mortgage $    379.50 | | | | |
| 1206. GA Res       FRMI        $    10.00  (from GFE#7) | | | | |
| 1207. | | | | |
| 1208. | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Required services that you can shop for | (from GFE#6) | | | |
| 1302. Equity and closing fee    Associated Title & Closing Company, LLC | | | | 900.00 |
| 1303. Overnight fee    Associated Title & Closing Company, LLC | | | | 83.00 |
| 1304. 2011 taxes 191013030    Muscogee County Tax Commissioner    731.59(S*) | | | | 1,097.33 |
| 1305. Home Warranty    Home Buyers Resale Warranty Corp. | | | | 399.00 |
| 1306. Seller Expenses    Gary G. Lawson, P.C. | | | | 400.00 |
| 1307. Termite    GW Exterminating Co., Inc. | | | 35.00 | |
| 1308. | | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | 7,174.85 | 9,691.33 |

Paid Outside Closing:'S' by Seller

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | File Number: 11-0750 | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Charges That Cannot Increase | HUD-1 Line Number | | |
| Our origination charge | # 801 | 2,244.67 | 2,244.67 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | |
| Your adjusted origination charges | # 803 | 2,244.67 | 2,244.67 |
| Transfer taxes | # 1203 | 504.50 | 509.00 |
| State tax/stamps - Deed | $ 129.50 # 1205 | | |
| State tax/stamps - Mortgage | $ 379.50 # 1205 | | |

| Charges That In Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | 80.00 | 54.00 |
| Government recording charges - Deed | $ 12.00 # 1202 | | |
| Government recording charges - Mortgage | $ 32.00 # 1202 | | |
| GA Res | $ 10.00 # 1206 | | |
| Appraisal Fee | # 804 | 450.00 | 450.00 |
| Credit Report | # 805 | 17.50 | 17.50 |
| Flood certification | # 807 | 9.00 | 9.00 |
| Mortgage Insurance Premium | # 902 | 1,249.67 | 1,249.67 |
| Title services and lender's title insurance | # 1101 | 1,151.00 | 885.00 |
| Owner's title insurance | # 1103 | 505.00 | 505.00 |
| | TOTAL | 3,462.17 | 3,170.17 |
| | Increase between GFE and HUD-1 Charges | $  0.00  or | 0.00  % |

| Charges That Can Change | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | 830.07 | 646.24 |
| Daily interest charges | # 901   $  12.9674  /day | 144.55 | 90.77 |
| Homeowner's Insurance | # 903 | 579.00 | 579.00 |

### Loan Terms

| Your initial loan amount is | $  126,216.00 |
|---|---|
| Your loan term is | 30 years |
| Your initial interest rate is | 3.75   % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $  703.29         includes<br>☒ Principal<br>☒ Interest          -->$       584.53<br>☒ Mortgage Insurance   -->$      118.76 |
| Can your interest rate rise? | ☒ No. ☐ Yes, it can rise to a maximum of          %. The first change will be<br>on          and can change again every<br>after          . Every change date, your interest rate can increase or decrease<br>by          %. Over the life of the loan, your interest rate is guaranteed to never<br>be lower than          % or higher than          %. |
| Even if you make payments on time, can your loan balance rise? | ☒ No. ☐ Yes, it can rise to a maximum of $ |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No. ☐ Yes, the first increase can be on          and the monthly amount<br>owed can rise to $<br>The maximum it can ever rise to is $ |
| Does your loan have a prepayment penalty? | ☒ No. ☐ Yes, your maximum prepayment penalty is $ |
| Does your loan have a balloon payment? | ☒ No. ☐ Yes, you have a balloon payment of $          due in          years          on |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>☒ You have an additional monthly escrow payment of $       182.08<br>that results in a total initial monthly amount owed of $       885.37    . This includes principal, interest, any mortgage insurance and any items checked below:<br>☒ Property taxes   -->$       133.83 ☒ Homeowner's Insurance -->$      48.25<br>☐ Flood Insurance                    ☐<br>☐                                    ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

## HUD-1 CERTIFICATION

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I, if the Purchaser/Borrower, acknowledge receipt in full of the loan proceeds, and if the Seller, acknowledge payment in full of the proceeds due me.

If this transaction involves a sale, I agree to adjust the tax prorations shown on the Settlement Statement when the actual ad valorem tax bill is rendered.

If this transaction involves a sale, as part of the consideration therefore, I agree that the contract between the parties is by reference incorporated herein and made a part hereof, and that the terms and conditions thereof shall survive the closing and shall not merge upon delivery of the deed.

I swear or affirm that I am of legal age and of sound mind, and that if I am the Seller, am a citizen of the United States of America, or if a corporation or other entity, am duly formed under the laws of the United States of America or one of the States thereof, and affirm my non-foreign status.

Seller TRC Global Solutions, Inc., a
Wisconsin Corporation

_____
Borrower Amanda Elizabeth Waller

by: Gary G. Lawson, Attorney in Fact

_____
Borrower

_____
Seller

_____
Borrower

_____
Seller

_____
Borrower

_____
Seller

To the best of my knowledge the HUD-1 Settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

The Law Office of Michael K. Eddings, P.C.

_____   Date: October 25, 2011
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For detail see: Title 18: U.S. Code, Sections 1001 and Section 1010.

## HUD-1 CERTIFICATION

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

I, if the Purchaser/Borrower, acknowledge receipt in full of the loan proceeds, and if the Seller, acknowledge payment in full of the proceeds due me.

If this transaction involves a sale, I agree to adjust the tax prorations shown on the Settlement Statement when the actual ad valorem tax bill is received.

If this transaction involves a sale, as part of the consideration therefore, I agree that the contract between the parties is by reference incorporated herein and made a part hereof, and that the terms and conditions thereof shall survive the closing and shall not merge upon delivery of the deed.

I swear or affirm that I am of legal age and of sound mind, and that if I am the Seller, am a citizen of the United States of America, or if a corporation or other entity, am duly formed under the laws of the United States of America or one of the States thereof, and affirm my non-foreign status.

Seller: TRC Global Solutions, Inc., a
Wisconsin Corporation

_____          by: Gary G. Lawson, Attorney in Fact
Borrower Amanda Elizabeth Waller.

_____          _____
Borrower                                  Seller

_____          _____
Borrower                                  Seller

_____          _____
Borrower                                  Seller


To the best of my knowledge the HUD-1 Settlement statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

The Law Office of Michael A. Fishman, P.C.

_____   Date: October 25, 2011
Settlement Agent

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment.  For detail see:  Title 18; U.S. Code, Sections 1001 and Section 1010.

**VERIFICATION**

STATE OF CONNECTICUT
COUNTY OF NEW HAVEN

PERSONALLY APPEARED before the undersigned officer authorized to administer oaths in and for said County and State, the undersigned, who being duly sworn and put to oath, deposes and says on oath, and based upon his/her personal knowledge, that the information contained in the foregoing Answer to Petition for Interpleader is true and correct.

This 21st day of November, 2011.

TRC Global Solutions, Inc.

BY: _Robyn M. Yaringron_ Its Duly Authorized Agent

Sworn to and subscribed before me
This 21st day of November, 2011.

Notary Public
My commission expires: _____

**VALERIE A. JOHNSON**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2015

CERTIFICATE OF SERVICE

This is to certify that I have this date served the opposing parties in the foregoing matter, with a copy of the above and foregoing by depositing in the United States Mail a copy of the same in a properly addressed envelope with adequate postage thereon to:

Law Office of Michael A. Eddings, P.C.
c/o Michael A. Eddings, As Registered Agent
860 Brookstone Center Parkway
Suite B
Columbus, Georgia 31904

Jeffrey Schneider, Esq.
Weissman, Nowack, Curry & Wilco, P.C.
One Alliance Center
4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Attorney for first American Title Insurance Company

William S. McFadden, Esq.
McFadden, Lyon & Rouse, LLC
718 Downtowner Blvd.
Mobile, Alabama 36609
Attorney for Federal National Mortgage Association

Ray L. Allison, Esq.
Denney, Pease & Allison
P. O. Box 2648
Columbus, Georgia 31902
Attorney for Jerome Rogers

Christopher Meacham, Esq.
Meacham, Early, Fowler, P.C.
P. O. Box 9031
Columbus, Georgia 31908
Attorney for Lachone Trice and Ike A. Nwaobi

Michael Moore, Esq.
United States Attorney
Attention: Ms. Veronica Jones
Civil Process Clerk
P. O. Box 1702
Macon, Georgia 31202
Attorney for United States of America

This ___21ˢᵗ___ day of November, 2011.

BUCHANAN & LAND, LLP

BY:_____

Benjamin A. Land
Georgia Bar No. 432825
William A. Buchanan
Georgia Bar No. 144226
Attorneys for TRC Global Solutions, Inc.

Post Office Box 2848
Columbus, Georgia  31902
(706) 323-2848

IN THE SUPERIOR COURT OF MUSCOGEE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST | * | |
| COMPANY, A DIVISION OF SYNOVUS | * | |
| BANK | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action File No. SU-11-CV-3875 |
| | * | |
| LAW OFFICE OF MICHAEL A. | * | |
| EDDINGS, P.C., FIRST AMERICAN | * | |
| TITLE INSURANCE COMPANY, FIRST | * | |
| AMERICAN TITLE COMPANY, JOHN | * | |
| DOE 1, JOHN DOE 2, JOHN DOE 3, et al., | * | |
| | * | |
| Respondents. | * | |

## TRC GLOBAL SOLUTIONS, INC.'S MOTION FOR PAYMENT OF FUNDS FROM REGISTRY OF COURT

COMES NOW TRC Global Solutions, Inc. ("TRC"), identified as "John Doe" in the above-styled action, and moves the Court to enter an Order directing the release of funds from the registry of the Court, to be paid as described below.

TRC has filed a verified Answer in the above-captioned action. That verified Answer is hereby adopted by reference as if fully set forth herein.

For the reasons set forth in TRC's verified Answer, the sum of $145,621.82 was paid into the trust account that is the subject of this action for the benefit of TRC. Those funds rightfully belong to TRC and, to the extent they have not already been paid, should be paid to the entities described in TRC's verified Answer. Those funds were paid into the trust account as a result of a real estate closing that occurred on October 25, 2011. That closing was designed to consummate the sale of real estate located at 2238 Birchwood Drive, Columbus, Georgia, 31909. TRC was the seller of this property, and

Amanda Elizabeth Waller was the buyer. As part of that closing, TRC fulfilled its obligation to sign the deed to the property over to the buyer. In return, sufficient funds were deposited into the trust account to cover the obligations of TRC, as described in TRC's verified Answer.

The funds that should have been paid out of the trust account to Chase Home Finance, LLC ($135,930.40), Coldwell Banker Kennon Parker Duncan & Key ($6,770.00), Associated Title & Closing Company, LLC ($983.00), and Gary G. Lawson, P.C. ($400.00) were not paid as they should have been and remained in the trust account at the time Petitioner paid said funds into the registry of the Court. Thus, those funds are presently part of the funds that are in the registry of this Court. It appears that the funds that should have been paid out of the trust account to cover the other obligations described in TRC's verified Answer were likewise not paid and also remained in the trust account at the time Petitioner paid said funds into the registry of the Court.

So that this real estate transaction may be finally consummated as intended by the parties thereto, TRC requests that the Court enter an Order directing the payment of the following funds from the registry of the Court at this time:

> $135,767.51 to be paid to Chase and an additional $22.21 per day to be paid to Chase for every day after November 28, 2011, provided that the amount to be paid to Chase out of these funds shall not exceed $135,930.49 (the amount paid into the trust account for the satisfaction of the Chase debt);

> $6,770.00 to be paid to Coldwell Banker Kennon Parker Duncan & Key;

> $983.00 to be paid to Associated Title & Closing Company, LLC; and

> $400.00 to be paid to Gary G. Lawson, P.C. for a closing fee in connection with this transaction.[1]

---

[1] When the Court is presented with proof that the other entities described in TRC's

TRC requests that the Court consider this Motion on an expedited basis due to the fact that these funds are indisputably owed and should be paid at this time and the fact that TRC continues to suffer harm each day that these funds are not paid.

WHEREFORE, TRC requests that the Court grant this Motion and direct that the payments requested above be made at this time.

This ___*21st*___ day of November, 2011.

BUCHANAN & LAND, LLP

BY: _____
Benjamin A. Land
Georgia Bar No. 432825
William A. Buchanan
Georgia Bar No. 144226
Attorneys for TRC Global Solutions, Inc.

Post Office Box 2848
Columbus, Georgia  31902
(706) 323-2848

---

verified Answer have not been paid out of the trust account, the Court should enter an Order directing the payment of those entities, with the balance of the funds paid into the registry for TRC's benefit to be paid to TRC.

CERTIFICATE OF SERVICE

This is to certify that I have this date served the opposing parties in the foregoing matter, with a copy of the above and foregoing by depositing in the United States Mail a copy of the same in a properly addressed envelope with adequate postage thereon to:

Law Office of Michael A. Eddings, P.C.
c/o Michael A. Eddings, As Registered Agent
860 Brookstone Center Parkway
Suite B
Columbus, Georgia 31904

Jeffrey Schneider, Esq.
Weissman, Nowack, Curry & Wilco, P.C.
One Alliance Center
4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Attorney for first American Title Insurance Company

William S. McFadden, Esq.
McFadden, Lyon & Rouse, LLC
718 Downtowner Blvd.
Mobile, Alabama 36609
Attorney for Federal National Mortgage Association

Ray L. Allison, Esq.
Denney, Pease & Allison
P. O. Box 2648
Columbus, Georgia 31902
Attorney for Jerome Rogers

Christopher Meacham, Esq.
Meacham, Early, Fowler, P.C.
P. O. Box 9031
Columbus, Georgia 31908
Attorney for Lachone Trice and Ike A. Nwaobi

Michael Moore, Esq.
United States Attorney
Attention: Ms. Veronica Jones
Civil Process Clerk
P. O. Box 1702
Macon, Georgia 31202
Attorney for United States of America

This _____2 1st_____ day of November, 2011.

BUCHANAN & LAND, LLP

BY:_____

Benjamin A. Land
Georgia Bar No. 432825
William A. Buchanan
Georgia Bar No. 144226
Attorneys for TRC Global Solutions, Inc.

Post Office Box 2848
Columbus, Georgia 31902
(706) 323-2848