IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| COLUMBUS BANK AND TRUST COMPANY, a division of Synovus Bank, | : : : | |
| Petitioner, | : : | |
| v. | : : | CASE NO. 4:11-cv-184-MSH |
| LAW OFFICE OF MICHAEL A. EDDINGS, P.C., *et al.*, | : : : | |
| Respondents. | : : | |

**O R D E R**

Presently pending before the Court are Respondents' cross-motions for summary judgment. (ECF Nos. 33, 176, 181, 184, 190, 191, 192, 193, 195, 196, 198.)  The parties agree on the relevant facts in this interpleader action, but disagree as to how the interpled funds should be distributed.  As explained below, the funds shall be distributed on a pro rata basis to those persons or entities who deposited funds into the Law Office of Michael A. Eddings' trust account on October 27, 2011.

BACKGROUND

Columbus Bank and Trust ("CB&T") initiated this interpleader action in the Superior Court of Muscogee County on October 28, 2011. (Notice of Removal Ex. A at 1, ECF No. 1-1.)  The Law Office of Michael A. Eddings, P.C. ("Eddings") had an IOLTA Trust Account at CB&T (hereinafter "Trust Account"). (*Id.* at 3.)  CB&T was informed that there was "considerable uncertainty as to the specific ownership of the funds on deposit in said account and that there [was] a risk of the funds in question being

delivered to persons other than those who have legitimate claims for said money." (*Id.* at 4.) Consequently, pursuant to an order of that court granting the petition for interpleader, CB&T interplead the funds into the registry of the Superior Court of Muscogee County. (*Id.* at 7.) The funds deposited with the clerk totaled $472,949.34. (*Id.* at 8.) On November 23, 2011, the United States removed this action to this Court. (Notice of Removal 1.) Respondents in this action who seek a portion of the interpled funds have moved for summary judgment. The Respondents agree that this action is properly brought as an interpleader action and that equitable principals govern, but they disagree as to how the interpled funds should be distributed. Respondents' motions for summary judgment are ripe for review.

## DISCUSSION

### I. Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## II. Undisputed Facts

On October 27, 2011, the Trust Account had an opening balance of -$14,669.44. (Mem. of Law in Supp. of Wells Fargo's Mot. for Summ. J. Ex. A at 18, ECF No. 176-2.)[1] That day $563,412.86 in deposits and $75,794.08 in debits were made on the Trust Account. (Trust Account Statement 2, 8, 9, 13, 17.) The remainder balance of $472,949.34 was deposited into the registry of the court.

The following claims are made on the $472,949.34 through motions for summary judgment:

- Jerome Rogers -- $89,498.90 deposited into the Trust Account on October 27, 2011;

- Wells Fargo Bank, N.A. -- $227,722.30 deposited into the Trust Account on October 27, 2011;

- Wells Fargo Bank, N.A. -- $1,198.25 deposited into the Trust Account on October 27, 2011;

- Lachone Trice -- $50,774.51 for a dishonored check dated October 25, 2011;

- Deutsche Bank National Trust Company -- $158,837.67 in proceeds owed from a closing on October 18, 2011;

- FBMC Mortgage Corporation -- $7,161.61 in proceeds owed from a closing on October 27, 2011;

- William Rembert -- $3,100.00 deposited into the Trust Account on October 26, 2011;

- Gregory Watkins -- $3,210.72 for a dishonored check from a closing on or around September 19, 2011;

---

[1] Exhibit A to Wells Fargo's motion for summary judgment is a certified copy of the October 2011 Statement of Account for the Trust Account. It will hereinafter be cited as "Trust Account Statement."

3

- Crescent Mortgage Company -- $197,137.49 deposited in the Trust Account on October 27, 2011;

- Federal National Mortgage Association ("Fannie Mae") -- $37,600.25 in proceeds owed from a closing on October 21, 2011;

- Fannie Mae -- $174,825.20 in proceeds from a closing on October 27, 2011[2];

- JPMorgan Chase Bank, N.A. and Wells Fargo Bank, N.A., as trustee for Certificate holders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificate Series 2007-AC3 -- $56,499.60 deposited into the Trust Account on October 7, 2011;

- Ike A. Nwaobi -- $9,800.00 deposited in the Trust Account on October 27, 2011

In total, the Respondents seek $1,017,366.50 from the Trust Account through their motions for summary judgment. In addition, Respondent Primary Residential Mortgage, Inc., moved for disbursement of the funds on December 9, 2011 (ECF No. 8), claiming that it is entitled to $582,779.23 for deposits made into the Trust Account between August 26, 2011 and October 24, 2011. Of the requests for payment, only seven are for funds that were deposited into the account on October 27, 2011—Jerome Rogers, Wells Fargo, FBMC Mortgage, Crescent Mortgage, Fannie Mae, and Ike Nwaobi. The October 27, 2011 requests total $532,518.55.

### III. Analysis

An interpleader action is an action in equity "designed to bring into one court all of the claimants to a particular fund so that it could be equitably divided among all rather than being a race to the swift[.]" *United States v. Sentinel Fire Ins. Co.,* 178 F.2d 217,

---

[2] Crescent Mortgage deposited these funds in the Trust Account on October 27, 2011. Crescent Mortgage also makes a claim to the same funds, but Crescent Mortgage received a mortgage from the purchaser of the property. (*See* Br. in Supp. of Fannie Mae's Mot. for Summ. J. Ex. D.)

4

225 (5th Cir. 1950)[3]; *see also Sanders v. Carney*, 117 Ga. App. 645, 645 (1986); O.C.G.A. § 23-4-31. "[A] district court has broad and significant powers in an interpleader action." *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007). At the second stage in an interpleader action, the court must determine the respective rights of each claimant to the property, or in this case, funds. *Ohio Nat'l Life Assurance Corp. v. Langkau ex. Rel. Estate of Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009). "[E]ach [Respondent] occupies the position of a plaintiff and must state his own claim and answer that of the other." *Tien*, 534 F. Supp. 2d at 1284.

Those Respondents who deposited their funds into the Trust Account on October 27, 2011 (the "October 27 Respondents") argue that equitable tracing must be used by this Court. Furthermore, because the Trust Account opened with a negative balance on October 27, they argue that any money deposited in the Trust Account before October 27 was misappropriated or distributed. Contrarily, those Respondents who deposited funds into the Trust Account prior to October 27 argue that the interpled funds are the result of comingled contributions of all Respondents. The pre-October 27 Respondents further argue that tracing is not equitable in this case because all Respondents have the same legal claim to the interpled funds. The Court agrees with the October 27 Respondents and finds that they have a greater claim to the funds than the pre-October 27 Respondents.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

The funds in question in this case all involved real estate closings performed by attorney Michael Eddings. "The attorney participating in the closing is a fiduciary with respect to the closing proceeds, which must be handled in accordance with the trust account and IOLTA provisions in Rule 1.15(II)."[4] *Formal Advisory Opinion No. 04-1*, 280 Ga. 227, 228 (Ga. 2006). "Closing proceeds from a real estate transaction which are nominal in amount or are to be held for a short period of time . . . must be deposited into an IOLTA." *Id.* On the other hand, "[f]unds that are not nominal in amount or funds, no matter what amount, that are not to be held for a short period of time are ineligible for placement in an IOLTA and must be placed in an interest-bearing trust account, with the net interest generated paid to the client." *Id.* (citing Ga. Rule of Professional Conduct 1.15(II)(c).) It is consequently questionable as to whether several of the deposits in the Trust Account should have been in that account pursuant to the Georgia Rules of

---

[4] Rule 1.15(II) states, in relevant part:

  c. All client's funds shall be placed in either an interest-bearing account with the interest being paid to the client or an interest-bearing (IOLTA) account with the interest being paid to the Georgia Bar Foundation as hereinafter provided.
      1. With respect to funds which are not nominal in amount, or are not to be held for a short period of time, a lawyer shall, with notice to the clients, create and maintain an interest-bearing trust account in an approved institution as defined in Rule 1.15(III)(c)(1), with the interest to be paid to the client. No earnings from such an account shall be made available to a lawyer or law firm.
      2. With respect to funds which are nominal in amount or are to be held for a short period of time, a lawyer shall, with or without notice to the client, create and maintain an interest-bearing, government insured trust account (IOLTA) in compliance with the following provisions:
          i. No earnings from such an IOLTA account shall be made available to a lawyer or law firm.
          ii. The account shall include all clients' funds which are nominal in amount or which are to be held for a short period of time.

Professional Conduct.  Regardless, the deposits made into that account are deposits of client's funds which Michael Eddings was holding in trust for those clients.  Despite being deposited into the Trust Account, those funds continue to belong to the depositors or clients and not to Mr. Eddings.

Since the funds belong to the client, those funds that were withdrawn prior to October 27, 2011, and were not used for the purpose for which they were provided to Eddings have been misappropriated, converted, or outright stolen by Eddings or its employees and agents.  Unfortunately for the pre-October 27 Respondents, their funds are gone.  The funds that are currently in the registry of the court are clearly funds which belong to those who deposited them on October 27, 2011.  Those who deposited their funds on October 27, 2011 are likewise the victim of theft because they will not recover the full amount of their funds.

A case cited by some of the pre-October 27 Respondents, *S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992), does not require a different result in this case.  In *Elliott*, the Eleventh Circuit declined to apply tracing rules because "each of the creditors occupied the same legal position as other creditors[.]"  953 F.2d at 1570.  Thus, "equity would not permit [one creditor] a preference; for equality is equity."  *Id.* (internal quotation marks and citation omitted).  Here, each of the Respondents does not occupy the same legal position as the others.  The funds deposited by the October 27 Respondents are still owned by them despite being deposited into the IOLTA account.  Those are the only funds that were frozen in the account and deposited with the court since the Trust

Account had a negative balance. Thus, the October 27 Respondents have a greater claim to the funds than the pre-October Respondents.

The outcome in this case would likely have been different had the Respondents' money not been given to Eddings *in trust* and deposited in an IOLTA account. The ownership of Respondents' money was never given to Mr. Eddings unlike in *S.E.C. v. Elliott* where the appellants were trying to use equitable tracing to find securities which they had transferred to Elliott. The Eleventh Circuit noted that the legal effect of the transfer was "a change in ownership" and that the appellants "had no security interest in the securities they had transferred to Elliott." 953 F.2d at 1569. Because of this change in ownership, "all of the former securities owners occupied the same legal position, [and] it would not be equitable to give some of them preferential treatment in equity." *Id.* at 1570. Here, for the Court to divide the frozen funds pro rata among all the claimants, the Court would be forcing individuals and entities to give up their own property (which never changed ownership) to satisfy claims of others. The equities weigh against such an outcome.

### III. Division of the interpled funds

The October 27 Respondents make claims to the funds in the amount of $532,518.55. Only $472,949.34 is in the registry of the court. The interpled funds come to 88.8% of the amount requested. Thus, each of the October 27 Respondents will receive 88.8% of his deposited amount:

- Jerome Rogers -- $79,487.17
- Well Fargo Bank, N.A. -- $203,293.60

8

- FBMC Mortgage Corporation -- $6,371.66
- Crescent Mortgage Company -- $19,825.44[5]
- Fannie Mae -- $155,256.89
- Ike A. Nwaobi -- $8,714.55

It is therefore ORDERED that the funds be distributed as provided above.

## CONCLUSION

The facts underlying the instant action show that a series of calculated breaches of trust have occurred to the detriment of individual depositors and public confidence. The language of law is too often sterile in nature; its usage in orders, opinions, and pleadings bereft of the pain occurring in the underlying, very human, transaction upon which it passes. Invariably, the law works best when it speaks plainly. How can it be more simply said than "Thou shalt not steal"?

The Law Office of Michael A. Eddings, P.C. by and through the acts of its agents, officers, and employees—whose identities and culpabilities are not yet determined—committed plan theft from persons individual and corporate who trusted them. No party to this litigation leaves it made whole, but no party leaves it without other remedies available. Applied in a context broader than an interpleader action, the law may offer further redress to all of the Respondents who, by this final order, regrettably receive less than that to which they are entitled.

---

[5] The Court is convinced by Fannie Mae's argument that the $174,825.20 deposited in the Trust Account for their benefit should be paid to Fannie Mae and not returned to Crescent Mortgage which received a mortgage for the property sold.

For the reasons explained above, Jerome Rogers, Wells Fargo, FBMC Mortgage, Crescent Mortgage, Fannie Mae, and Ike Nwaobi's motions for summary judgment (ECF Nos. 33, 176, 190, 193, 195, 198) are granted in part and denied in part.  The remaining motions for summary judgment are denied (ECF Nos. 181, 184, 191, 192, 196).

SO ORDERED, this the 12th day of August, 2013.

S/ Stephen Hyles  
UNTED STATES MAGISTRATE JUDGE